### COLLINS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 28, 1912.)

MUNICIPAL CORPORATIONS (§ 220*) — EMPLOYÉS — CONTRACT FOR REDUCED WAGES—VALIDITY.

    A steam engineer employed by New York City at per diem compensation could validly contract, as coemployés did, that he should receive only his proportionate share of the funds available to pay the employés of his department, in order to avoid a reduction of the force on account of insufficiency of a salary appropriation.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608; Dec. Dig. § 220.*]

Appeal from Appellate Term.

Action by John Collins against the City of New York. From a determination of the Appellate Term affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals by permission. Reversed, and new trial granted.

See, also, 148 App. Div. 918, 133 N. Y. Supp. 1116.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Loyal Leale, of New York City, for appellant.
S. John Block, of New York City, for respondent.

SCOTT, J. Plaintiff was a steam engineer in the employ of the city of New York, borough of Brooklyn, at the compensation of $4.50

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

per diem, and he sues for payment at that rate for the period from December 16 to 31, 1908.

In the year 1908 the commissioner of public buildings and offices, under the borough president of the borough of Brooklyn, found in November that he was in danger of overrunning the appropriation for salaries and wages for his department during the year, and that it would be impossible to continue during the remainder of the year to pay the amount of wages and salaries he was then paying. He thereupon called a meeting of his employés, and explained the condition of affairs to them, stating that, unless he could procure more money or come to some agreement with the employés, he would be obliged to dismiss a large number of them, and send their names back to the civil service lists. A considerable number of the employés expressed their reluctance to lose their positions and have their names sent back to the civil service lists, with resulting uncertainty as to their reappointment, and requested the superintendent to devise some method by which this course would be averted. Accordingly, the superintendent drew up an agreement which was signed by a large number of the employés, including plaintiff. This agreement stated the financial condition in which the department found itself as above explained, and contained the following waiver or agreement on the part of the employés who signed it:

"Now, therefore, I, the undersigned, being one of the said employés in question (to wit, an engineer), in consideration of the above-mentioned conditions and of my being retained under such circumstances in the list of employés of said bureau, and upon the terms indicated (instead of being wholly dropped from said list and reported to the civil service commission as no longer in the service), do hereby for myself and for my heirs, executors, administrators or assigns freely and expressly consent, promise and agree that for any work, labor or service by me to be done or rendered as such employé of said bureau in or about the maintenance of the public buildings and offices of the borough or otherwise, I am to have, receive or be entitled to no pay, salary, wages, or compensation other or greater than simply about one equal share of the amount which the borough president shall or may have in his hands legally available for the purpose, and I hereby waive, release and surrender any and all actual or possible right or claim to demand, receive or recover from the city of New York or the borough of Brooklyn, or any of the officials or representatives of said city or bureau any amount whatsoever, as, for or on account of any such pay, salary, wages or compensation for any such services by me as such employé during the remainder of the year 1908."

By means of transfers from other appropriations, and the issue of a certain amount of revenue bonds, it was found possible to pay the employés down to and including the 15th day of December, 1908, but not to pay them for the remainder of the year. The plaintiff remained in the employ of the city and has so continued ever since, and now seeks to repudiate his agreement and recover for the period mentioned.

The plaintiff did not hold an office to which his compensation attached as an incident. He was merely a per diem employé, and it was fully competent for him to contract with the city for a reduction or nonpayment of his wages during a stated period. A similar case was before this court in Downs v. City of New York, 75 App. Div. 423,

78 N. Y. Supp. 442, affirmed 173 N. Y. 651, 66 N. E. 1107, and what was said then is entirely applicable to the present case:

"His [plaintiff's] consent to the arrangement was purely voluntary, and in no sense compulsory, and made under circumstances conclusively showing that he fully understood the necessity that required the arrangement to be made. Every consideration of equity, morality, and propriety requires that he should be regarded as estopped from claiming adversely to his deliberate agreement."

That the agreement in question was voluntary and not compulsory is evident. The superintendent made no attempt to coerce the employés. He merely stated to them the facts as to the appropriation. If a sufficient appropriation could not be obtained, or some arrangement made by the consent of the employés, it would have been, not only his right, but his positive duty, to dismiss sufficient employés to bring the amount of wages to be paid within the limits of the appropriation. If he had dismissed them, their names would have been returned to the civil service lists, and they would have been obliged to take the chances of a reappointment. This naturally they wished to avoid, for they would have encountered the hazard of not finding re-employment within a year, at the expiration of which time their names would have been dropped from the list. Greater New York Charter (Laws 1901, c. 466) § 1543. It was a distinct advantage to plaintiff and others similarly situated to be retained in the service, as they could not have been but for this agreement, and that advantage served as a sufficient consideration for the agreement in question. The same question involved in this appeal was considered by Mr. Justice Stapleton in Kirk v. City of New York, 136 N. Y. Supp. 1061, and decided in favor of the city in a very satisfactory opinion. We have arrived at the same conclusion.

It follows that the determination of the Appellate Term and the judgment of the Municipal Court must be reversed, and a new trial granted, with costs in all courts to appellant to abide the event. All concur.

