JEFF JENNINGS, COMPLAINANT, APPELLANT, *v.* ED JEN-
NINGS *et al.*, DEFENDANTS, APPELLEES.*

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to statutes prohibiting remarriage after divorce, see annotation in 32 A. L. R., 1139; 51 A. L. R., 326; 5 R. C. L., 1004, 1005; R. C. L., Perm. Supp. p. 1566.

As to retroactive operation of statute, see 25 R. C. L., 787; R. C. L., Perm. Supp., p. 5609; R. C. L., Pocket Part, title "Statutes," section 35.

GREEN, WEBB & BASS, for complainant, appellant.

FRANK MONTGOMERY, WM. I. DAVIS, and J. R. KETRON, for defendant, appellee, Ed Jennings.

BOWEN & BOWEN, for R. S. Jennings, Maude Hurst, Burbena Jennings and Pat Jennings.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a contest over property rights in lands devised by Anderson Jennings, among his grandson Ed Jennings, another grandson Jeff Jennings, and the children of another grandson Lewis Jennings. Ed, Jeff and Lewis were sons of testator's son Royal S. Jennings. The chancellor decreed all the property to Ed Jennings. The Court of Appeals decreed the property one-half to Ed Jennings and one-half to the children of Lewis Jennings. Ed Jennings and Jeff Jennings have filed petitions for *certiorari*, which have been granted.

The will gave the land in litigation to testator's widow for life, then to Royal S. Jennings for life, providing:

"My said son Royal S. Jennings shall take said lands at the death of my wife Zylpha, or upon her second marriage, and not before, and to hold the same for and during his natural life and at his death to his sons."

Testator's widow died in 1867. Royal S. Jennings died in 1929. He married Eliza Yoakum in 1864 and lived with her until she died in 1886. Ed Jennings and Lewis Jennings were born of this marriage, Lewis dying before his father.

About 1891 Royal S. Jennings became involved in an affair with the wife of a neighbor, one Holland, and the latter in that year procured a divorce from his wife on account of adultery committed by her with Royal S. Jennings. All of this is of record in the chancery court of Claiborne County.

In 1892 a license was procured and a marriage ceremony performed between Royal S. Jennings and Holland's divorced wife and the two lived together as man and wife until the death of Royal S. Jennings, in 1929. Jeff Jennings was born of this union. Holland was still living at the time of this litigation.

The chancellor and the Court of Appeals were of opinion that the attempted marriage between Royal S. Jennings and Holland's divorced wife was null and void and that accordingly Jeff Jennings could not be regarded as a legitimate child, entitled to take under the will of his grandfather. We have with some reluctance been forced to concur in this conclusion.

■ Section 8452 of the Code, based on chapter 26 of the Acts of 1835-36, is as follows:

"When a marriage is absolutely annulled, or dissolved, the parties shall severally be at liberty to marry again; but a defendant who has been guilty of adultery shall not marry the person with whom the crime or act was committed, during the life of the former husband or wife."

While this statute does not expressly declare the prohibited marriage void, our decisions have treated such an attempted marriage as absolute nullity, open to collateral attack, apparently on the theory that, under the policy of this State, the statutory inhibition goes to the capacity of the parties to marry. Our cases have dealt with such unions as they have dealt with unions between negroes and whites, likewise prohibited by statute.

In *Owen* v. *Bracket,* 75 Tenn. (7 Lea), 448, a woman, divorced from her husband on account of adultery with another man, undertook to marry her paramour. By reason of the statute above quoted, she was denied homestead in the estate of the man whom she had undertaken to marry. The court said of the statute that "it accords with public policy, is predicated of common sense, and tends to assure a decent propagation of the human race."

In *Pennegar* v. *State,* 87 Tenn., 244, a wife divorced for adultery undertook a marriage with the man with whom she had committed adultery during the life of her former husband. It was held that the parties to this invalid marriage, living together as man and wife in this State, were guilty of lewdness, and their conviction of this offense was sustained. This, although the parties went to Alabama and the marriage was performed there and there was nothing in the laws of Alabama prohibiting the guilty divorced party from marrying the paramour.

The court went into an elaborate consideration of the matter in *Pennegar* v. *State.* It was concluded that marriages had in other States, where parties from this State had gone to such other States "for the purpose of avoiding our own laws in matters of form, ceremony, or qualification merely" would be recognized as valid. It was said, however, that "We hold that where citizens of this

State withdraw temporarily to another State, and there marry, for the purpose and with the intent of avoiding the statute in question, passed in pursuance of a determined policy of the State, in the interest of public morals, peace, and good order of society, such parties upon their return to this State and cohabiting as man and wife, are liable to indictment in the courts of this State for lewdness."

In *Pennegar* v. *State*, speaking of the invalid marriage, it was said "the marriage, being prohibited by statute, is void if solemnized in this State." For this the court cited *Owen* v. *Bracket, supra; Carter* v. *Montgomery,* 2 Cooper's Chancery, 225, and later *State* v. *Bell,* 66 Tenn. (7 Baxt.), 9. The last two cases considered marriages attempted between white persons and negroes.

In *Newman* v. *Kimbrough* (Ch. App.), 59 S. W., 1061, 52 L. R. A., 669, affirmed by this court, a husband, divorced by his wife on account of adultery, during her lifetime, married his paramour in Texas and returned to this State. He sued for property of his paramour, to which he would have been entitled by virtue of his marital right, if the marriage undertaken with his paramour had been valid. His suit was dismissed. It was said:

"The policy of the law of this state is to maintain the marriage relation, and to remove all inducements of infidelity on the part of the husband or the wife possible by shutting off all hope of marriage with a paramour during the life of the wife who has obtained the divorce. It is also a part of the policy of this state to maintain intact the family relations incurred under the first legal marriage, and thereby promote chastity, and also harmony in the family."

In *Newman* v. *Kimbrough* it was more than once said that a marriage in this state in violation of the statute, Code, section 8452, was invalid and void.

In view of the public policy of this State, evidenced by the statute and so strongly declared and reiterated in the decisions just referred to, we feel constrained to hold that the marriage attempted between Royal S. Jennings and the divorced wife of Holland was void from its inception, that no legal rights could grow out of such a union, and that the children of such union must be regarded as illegitimate.

The foregoing denies any interest of Jeff Jennings in the lands involved and the other question is whether the children of Lewis Jennings have any interest in such lands.

The lands were devised, as heretofore shown, upon the death or second marriage of his mother, to Royal S. Jennings "to hold the same for and during his natural life and at his death to his sons." The language used in the will seems to bring the devise plainly within the Tennessee class doctrine.

"The rule is well settled that, where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number, in consequence of future births or death, and the time of payment of distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only, as at that time, fall within the description of persons, constituting such class." *Satterfield* v. *Mayes,* 30 Tenn. (11 Humph.), 58. See also *Sanders* v. *Byrom,* 112 Tenn., 474; *Tate* v. *Tate,* 126 Tenn., 169.

The devise here seems clearly to a class—the sons of Royal S. Jennings. It therefore follows that the entire interests vested in such persons, as at the death of Royal S. Jennings, could be described as his sons. Ed Jennings was the only son of Royal S. Jennings that survived him. Lewis Jennings was dead at that time and Jeff Jennings is *nullius filius*.

The will of Anderson Jennings is too lengthy to be incorporated in this opinion, but we have carefully examined it all and find nothing therein to disintegrate the class doctrine. Generally speaking, aside from the provisions for his widow, Anderson Jennings gave his personal property to his daughters and his lands to his sons for life. He left three sons and the devises of lands to the other sons were upon the same terms as the devise to Royal S. Jennings—remainders to the sons of these sons.

The Court of Appeals expressed the opinion that the class doctrine would be applicable but for chapter 13 of the Acts of 1927, carried into the Code at section 7598. The Code section is as follows:

"Where a bequest, devise, conveyance, transfer or gift is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or death, and the time of payment, distribution, vestiture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property which the member so dying would take if living, unless

a clear intention to the contrary is manifested by the will, deed or other instrument.''

We do not agree to this conclusion of the Court of Appeals. The Act of 1927 undertook to deal with cases ''where a bequest, devise, conveyance, transfer or gift *is* made, etc., etc.'' The Act did not undertake to deal with any case where a bequest, devise, conveyance, etc., had already been made. The statute is clearly prospective in its operation.

It was said by this court in *Heiskell* v. *Lowe,* 126 Tenn., 475, 491, ''that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt, the doubt must be solved against the retrospective effect.'' And again ''that a law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression.'' See also *Dugger* v. *Insurance Co.,* 95 Tenn., 245, 32 S. W., 5, 28 L. R. A., 796.

Moreover it is conceded that a statute like this, if it disturb vested rights, would be invalid.

In *Satterfield* v. *Mayes, supra,* the court said:

''We do not deem it necessary to enter into any discussion of the question whether the remainder in the present case be vested or contingent—a question that perhaps admits of but little discussion. Regarding it as a vested remainder, as we do, the question is, when, and in whom does the interest vest? To which we answer, that it vests in the described class, as a class, and not individually in the persons composing such class, and the entire subject of the gift survives to, and vests

in the persons constituting such class at the period when payment or distribution of the fund is to be made.''

This was expressly approved in *Sanders* v. *Byrom, supra.*

For the reasons stated, we are of opinion that Ed Jennings is entitled to the entire estate in the lands and the decree of the Court of Appeals is thus modified and the decree of the chancellor affirmed.