## STEELE v. CITY OF CHATTANOOGA.

Eastern Section.   March 9, 1935.

Petition for Certiorari denied by Supreme Court, June 10, 1935.

H. B. Mack, of Chattanooga, for appellant.
J. W. Anderson, of Chattanooga, for appellee.

. McAMIS, J.   Chapter 692 of the Private Acts of 1927, amending the charter of the city of Chattanooga, fixes the salaries of policemen and firemen of said city at $160 per month.   While appellant was serving successively as fireman and policeman. he, along with all the other firemen and policemen of the city, authorized the city auditor to make certain stipulated deductions each month from his salary.   He instituted this suit to recover the sum · of $421.35, representing the accumulated difference between what appellant would have received at $160 and what he actually received, during the period between May, 1932, when the deductions were first made, and January, 1934, when appellant was discharged.

The chancellor held appellant estopped to recover the amount sued for, or any amount. and dismissed the bill, from which action he has appealed to this court.   The several assignments of error are so interrelated that a joint discussion and disposition of them will be conducive to brevity as well as a clearer conception of the issue presented.

The facts pertinent to this inquiry are that, during the time the deductions were made from complainant's salary, the city of Chattanooga, on account of the depression, was unable to collect a large percentage of its assessed taxes, resulting in material loss of revenue and necessitating a curtailment of expenditures in the various departments. Where the salaries of officers and employees were fixed by the city government, they were reduced by its governing body, but there was no attempt made to reduce salaries fixed by statute. As to such salaries, the plan was to effectuate reductions, comparable to the reductions made by the city government (where it had the power to do so), by voluntary action upon the part of the officers or employees of the city, so to be affected.

The commissioner of fire and police called the fire and police chiefs into conference and advised them of the necessity of cutting expenses, either by reducing the number of firemen and policemen, or by retaining the same number then employed, at a reduced salary. The firemen and policemen were not appointed for a fixed term, and, while the city had the right to release any of the personnel at any time it saw fit, it recognized that it had no right to reduce the salaries as fixed by statute. It seems to have been mutually desired to reduce the salaries by voluntary agreement, if possible, rather than to reduce the personnel. Accordingly, the commissioner caused to be drafted and circulated, by superior officers, among both the firemen and policemen, the following agreement:

"We, the undersigned members of the Police and Fire Department realizing the financial condition of the City due to its decreased revenues, and realizing that for our department to live within its budget this year, that it is necessary that we cooperate by voluntarily decreasing our salaries.

"We agree and hereby authorize the city auditor to deduct twenty per cent from our salaries each month," etc.

All policemen and firemen of the city, including complainant, signed the foregoing agreement and two or three others of similar import, and all of them, including complainant, thereafter received and accepted, without protest or objection of any kind, the reduced salaries as contemplated.

The charge is made that complainant signed the reduction agreement because of duress and under threat of losing his position if he did not do so, but he is unable to designate any official of the city who made such threat or brought any compulsion to bear upon him. Such compulsion as existed arose from economic conditions and was not personal or official. We are of opinion, rather, that the agreement was voluntarily entered into in order to obviate the dismissal of any of the personnel because of the reduced appropriation for the department. It is apparent that, if the agreement

to reduce salaries had not been made, the city would have had no other course open to it except to reduce the number of men employed, but no one was told that if he, individually, refused to sign the agreement, he would be discharged. This was not compulsion or duress, nor was it a threat. It was merely a frank and truthful statement of existing conditions and the two alternatives open to the city and its employees.

The question squarely presented, therefore, is, Can complainant recover under the charter salary provision, in spite of the reduction agreement, absent duress, compulsion, or threat.

Similar questions have frequently been before the courts of other jurisdictions, but the question is one of first impression in this state.

Complainant contends that the charter provision, being a statute covering the subject, is mandatory, and that a sound public policy forbids that it be circumvented and rendered inoperative even by agreement of the city and the affected officer or employee. The city on the other hand, contends that complainant is estopped to claim the amount which he voluntarily agreed to forego the collection of, the city having acted on his agreement and refrained from effecting a reduction in expenditures, as it could have done, by dismissing some of the firemen and policemen instead of retaining all of them at a reduced salary, as it was induced to do by complainant's agreement.

The authorities upon the subject are not in agreement. Some courts hold that a public officer is not estopped by accepting less than the salary to which he is entitled by law, even where the reduction is supported by express agreement upon his part. Such holdings are based upon considerations of public policy which we do not find present here, for the reason, among others, that the contract is executed rather than executory. There is now no possibility that the public good will be in any wise affected; the service of this particular employee having been terminated. Conceding, but not deciding, that a sound public policy would forbid the enforcement of an executory contract of this nature, we are unable to see wherein any question of public policy is involved after the service has been performed and reduced compensation paid and accepted without protest by the officer. Second Nat. Bank v. Ferguson, 114 Ky., 516, 71 S. W., 429; De Boest v. Gambell, 35 Or., 368, 58 P., 72, 353. In the latter case the court observed and applied a distinction between an executed and an executory contract to accept a reduction in salary.

We are of opinion complainant should be repelled from a court of conscience in his attempt to gain an unconscionable advantage from an agreement to which he voluntarily assented for his own benefit and that the chancellor correctly held him estopped from recovering in this case.

McQuillen, in his admirable work on Municipal Corporations, in volume 2, page 249, section 542, states the general rule as follows: "The acceptance of a less sum than that allowed by law, as salary or compensation, without objection, and in full satisfaction for services rendered will ordinarily estop the officer or employee from claiming more."

. In the appended notes numerous cases are cited in support of the text, as well as other cases holding the officer or employee not estopped.

For holdings in accord with the view herein expressed, see, also, Hobbs v. City of Yonkers, 102 N. Y., 13, 5 N. E., 778; O'Hara v. Town of Park River, 1 N. D., 279, 47 N. W., 380; Peterson v. New York, 126 Misc., 326, 213 N. Y. S., 322; Love v. Mayor, etc., 40 N. J. Law, 456; Collins v. New York, 151 App. Div., 618, 136 N. Y. S., 648; McInery v. Galveston, 58 Tex., 334; Rau v. City of Little Rock, 34 Ark., 303; Coyne v. Rennie, 97 Cal., 590, 32 P., 578; Bell v. Sullivan, 158 Ind., 199, 63 N. E., 209; and Woods v. Woburn, 220 Mass., 416, 107 N. E., 985, Ann. Cas., 1917A, 492.

Cases taking a contrary view are collated in 19 Ann. Cas., 1075.

By analogy of reasoning, the following Tennessee cases are in point here, upon the question of estoppel: Saylor v. Trotter, 148 Tenn., 359, 367, 255 S. W., 590; State ex rel. v. American Glanzstoff Corporation, 167 Tenn., 597, 72 S. W. (2d), 775; Roberts v. Roane County, 160 Tenn., 109, 23 S. W. (2d), 239; and Collier v. Montgomery County, 103 Tenn., 705, 54 S. W., 989.

All assignments of error are overruled, and the decree affirmed, with costs.

Portrum and Ailor, JJ., concur.