STATE *ex rel.* BALL, *v.* CITY OF KNOXVILLE *et al.*\*

(*Knoxville,* September Term, 1940.)

Opinion filed February 3, 1941.

---

\*This case reprinted and annotated in 135 A. L. R. ——.

J. C. THOMASON, of Knoxville, for plaintiff.

DANIEL J. KELLY, of Knoxville, for Mrs. Anne S. Sylvester.

W. B. LOCKWOOD, of Knoxville, for City of Knoxville.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is a *mandamus* suit by which Stella Ball, relator, for several years an employee of the City of Knoxville until her discharge on September 15, 1939, seeks to be restored as an employee of said City; or, in the alternative, to recover the alleged salary due her. Her petition was demurred to by the City and the other defendants, the demurrers sustained, and her suit dismissed. The case is in this Court upon her appeal in the nature of a writ of error.

Relator was first employed on January 22, 1936, as secretary to the City Manager at a salary of $145 per month, which position she held until January 1, 1938, when she was transferred to the position of secretary, stenographer, or clerical employee in the Department of Finance at the same salary. In February, 1938, she was transferred to the Water Department of the City and her salary reduced to $75 per month. In April, 1938,

she was transferred to the Safety Department and her salary raised to $90 per month. In July, 1938, she was again transferred to the Water Department as secretary, stenographer, or clerical employee, her compensation being fixed at $75 per month, and she continued to serve in this capacity, at the same salary, until she was discharged. It does not appear from her petition that she ever protested or objected to these changes, or made claim for compensation in excess of that she was receiving from the City, until shortly after her discharge. Upon her transfer from the position of secretary to the City Manager she was succeeded by Mrs. Anne S. Sylvester, one of the defendants, who still occupies that position.

At no time during relator's employment by the City were any charges preferred against her, and no hearing was accorded her as provided by section 75 of the City Charter, Priv. Acts 1923, chapter 412, as amended by Priv. Acts 1935, chapter 293.

Section 66 of the Charter provides, in substance, that no official of the City of Knoxville shall have the right to change any employee under civil service from one position or class to another position or class within a department or otherwise at a reduced salary, without there first having been preferred and sustained charges against such employee.

Section 66 also provides for the suspension or discharge of employees to effect economy, those last employed to be first discharged.

The foregoing presents the main features of the civil service system in force at the time relator was placed under civil service on June 1, 1937, pursuant to Chapter 281, Private Acts of 1937, the pertinent provisions of which, as set forth in the first section, are as follows:

"All employees filling positions made subject to Civil Service by this Act shall be entitled to all of the benefits and protection of other Civil Service Employees of Knoxville, except as hereinafter provided, and shall be subject to all rules, regulations, ordinances, and/or provisions of the Charter of the City of Knoxville with reference thereto.

"No person holding any of the positions made subject to Civil Service by this Act shall be deemed to hold any particular office or employment under Civil Service, but only employment within a department, and may be changed from one position to another in the same department, or from one department to another department, at the discretion of the Director in charge, with the approval of the City Manager."

■ Under the foregoing charter amendment relator became a civil service employee, and was subject to transfer from the position of secretary to the City Manager to that of clerical employee in the Department of Finance since her salary remained $145 per month.

■ The relator's transfers to the Water Department in February, 1938, to the Safety Department in April, 1938, and back to the Water Department in July, 1938, were contrary to the foregoing sections of the Charter since, in each instance, her salary was greatly reduced. Had she protested, or sought restoration, or made claim for the difference in salary within a reasonable time, she would have been entitled to relief. But, for some reason not explained in her petition, she acquiesced both in the transfers and in the reduction of salary for eighteen months, and never offered any complaint or protest until after her discharge. She may have acquiesced for fear of being discharged in the interest of economy, or of having charges preferred against her, or for some other

reason. The fact is that during that long period she led the officials to believe that these transfers met with her approval. This, in effect, constituted new contracts between the parties, resulting in the abrogation of the old ones. We hold, further, that by such delay relator has forfeited her rights to be reinstated in her former positions, as well as to recover additional compensation.

In *City of Knoxville* v *Smith,* 176 Tenn., 73, 138 S. W. (2d), 422, it appeared that Smith, after serving as Building Inspector for more than two years at a monthly salary of $240, was transferred to the Engineering Department at a salary of $150. He accepted the reduced salary under protest, notifying the City that in conformity with the civil service provisions of the City Charter he would insist on being paid his full salary of $240 per month, and within less than a year instituted suit to recover the difference and was awarded a judgment therefor.

In *Nicholas* v. *United States,* 257 U. S., 71, 42 S. Ct., 7, 9, 66 L. Ed., 133, 135, 136, it is said:

"We agree with the Court of Claims that a person illegally dismissed from office is not thereby exonerated from obligation to take steps for his own protection and may not for an unreasonable length of time acquiesce in the order of removal, which it was within the power of the Secretary to make, and then recover for the salary attached to the position. In cases of unreasonable delay he may be held to have abandoned title to the office and any right to recover its emoluments. The claimant relies upon the *Wickersham Case (United States* v. *Wickersham),* 201 U. S., 390, 26 S. Ct., 469, 50 L. Ed., 798. In that case this court held that one entitled to the protection of a rule, or statute, requiring notice to be given him could not legally be separated from the service by

suspension without compliance with the rule or statute, and was entitled to compensation during the period of his wrongful suspension. In that case the record disclosed that Wickersham was suspended on November 1, 1897, and that on November 5, 1897, he protested against his suspension, and on December 28, 1897, demanded his salary. The case did not present and there was no occasion to decide the question of the effect of delay and acquiescence upon the right to recover compensation. It appeared that Wickersham was diligent in asserting his rights, as well as ready and willing to discharge the duties of the government employment in which he was engaged.

"It must be remembered that we are dealing with the discharge of public duties which it is important shall be carried on regardless of the personnel of those who discharge them. While one inducted into office or public employment is entitled to the privileges or emoluments thereof, until legally separated. therefrom, he is not absolved from the duty of diligence upon his part in the assertion of his right to the office, or to the compensation attached thereto. Public policy requires that the government shall be seasonably advised of the attitude of its officers and employees attempted to be displaced when they assert illegal removal or suspension as a basis for the recovery of the office or its emoluments. This is necessary in order that proper action may be taken in the public interest, as well as that which is required to vindicate the rights of one wrongfully removed from the public service. This principle was recognized in *United States ex rel. Arant* v. *Lane,* 249 U. S., 367, 39 S. Ct., 293, 63 L. Ed., 650. That case was one in *mandamus* to compel the restoration of an officer, who alleged that he was wrongfully removed without notice or an oppor-

tunity to be heard, and it was held that a delay of 20 months barred by laches his right to the writ. The reasoning of the opinion, and the comments as to the character of public employment and the conduct required of one who would assert his rights when wrongfully deprived of them, are apposite here. The findings in this case disclose that plaintiff took no steps to question the order dismissing him from the service, nor to ask for a copy of the charges upon which he was removed. He did nothing for his vindication until he brought this suit 3 years after his removal from the office, to recover compensation. We hold, therefore, as did the Court of Claims, that such a lack of diligence evidenced an abandonment of his title to the office, and of his right to recover the emoluments thereof.''

In the next case in the same reports, *Norris* v. *United States*, 257 U. S., 77, 42 S. Ct., 9, at page 11, 66 L. Ed., 136, on page 139 the court said:

''We need not repeat the discussion in the *Nicholas Case,* 257 U. S., 71, 42 S. Ct., 7, 66 L. Ed., 133, just decided, of the principles which we deem controlling in cases of this character. The question here is: Did Norris use reasonable diligence, in view of the obligation placed upon him, notwithstanding his wrongful removal, to assert his right to the compensation attached to the office? It is true that it has been found that he was ready, willing, and able to discharge its duties, but no fact is found explaining his failure to assert his right to the office, or its emoluments, for the period of 11 months and a little over. He did not, as did Wickersham (*United States* v. *Wickersham,* 201 U. S., 390, 26 S. Ct., 469, 50 L. Ed., 798), promptly demand a restoration to the office, nor make any claim to its emoluments because the power of removal had been exercised with-

out giving him the opportunity for a hearing which the statute affords. Each case must be decided upon its own facts, and we are of opinion that the findings here do not disclose that exercise of reasonable diligence on Norris' part which the law imposes upon him as a duty if he would recover compensation for services in an office which the government might fill with another, or otherwise adjust its service so as to dispense with the service of the plaintiff. Public policy requires reasonable diligence upon the plaintiff's part, which we think the findings in this record do not disclose.''

By Chapter 491, Private Acts of 1939, the Charter of the City of Knoxville was amended solely with respect to civil service. Section 12 of the Act provides as follows:

''That due to the anticipated combination of the electric and water departments and the necessary readjustments in connection therewith, the rights conferred by this Act on the employees in the Departments under the supervision of the Knoxville Electric Power and Water Board shall take effect on November 1, 1939, but in all other respects this Act shall take effect from and after its passage, the public welfare requiring it.''

The same counsel who represented relator in the present case represented relator in the case of *State ex rel. Anderson* v. *City of Knoxville*, 176 Tenn., 541, 144 S. W. (2d), 758, in which latter case it was conceded that if the 1939 Act was valid, by virtue of section 12 thereof, Anderson, who was likewise discharged from the Water Department on September 15, 1939, could not recover because, at the time of his discharge, he possessed no civil service status. In that case this Court sustained the validity of the Act and held that Anderson was entitled

to no relief. That decision is controlling as to relator in the present case.

Counsel for relator invokes the following provision of section 5 of the 1939 Act:

"In computing the seniority of an employee who has been transferred or promoted, the seniority of such employee in the position to which he has been transferred or promoted shall include only the time actually served in such position. However, if an employee in such a position is subject to dismissal for economy reasons, either because of the reduction of forces or because of the abolition of his position, he shall have a right to return to any civil service position formerly held by him and his seniority in such position shall include both the time previously served in such position plus all of his service with the City subsequent to the date when such employee first left the position to which he is returning."

Unquestionably, this portion of the Act relates to the seniority of an employee who has a civil service status at the time of such promotion, transfer, or discharge. Relator was not under civil service at the time of her discharge, as such right or protection had been taken away by section 12, Chapter 491, Private Acts of 1939, which became effective on March 10, 1939.

For the reasons stated the judgment of the trial court will be affirmed.