MOLLOY *et al. v.* CITY OF CHATTANOOGA.

(*Knoxville,* September Term, 1949.)

(May Session, 1950.)

Opinion filed July 15, 1950.

Rehearing Denied August 31, 1950.

E. B. Baker, Harry J. Schaeffer and Joe N. Hunter, all of Chattanooga, for complainants.

Moon & Anderson, W. A. Wilkerson and E. K. Meacham, all of Chattanooga, for defendant.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Because of the very serious economic depression existing in 1932 and continuing for several years the City of Chattanooga was unable to collect enough taxes to meet its budget appropriations. So it became necessary to reduce the salaries of all of its officials and employees. This was done by formal action as to all employees and officials except those in the police and fire departments. The City had no authority to reduce their compensation below $160.00 per month because that minimum was fixed by Chapter 692 of the Private Acts of 1927. However, the Commissioner of these two departments did have the authority to reduce the number of such employees because of this financial emergency, and was faced with the absolute necessity of discharging about twenty of them unless some plan of reducing the salaries of all of them could be adopted.

All of the firemen and policemen were fully advised of the situation and responded by executing for the year 1932 and each year thereafter through September 1937 an instrument reading as follows:

"We, the undersigned . . . realizing the financial condition of the City due to its decreased revenue, and realizing that for our Department to live within its budget this year, that it is necessary that we cooperate by voluntarily decreasing our salary. We agree and hereby authorize the City Auditor to deduct ten percent from our salary each month for the fiscal year 1932-33."

The percentage of decrease so agreed upon was more than 10% during some of these years. For at least one year it was 20%.

On September 23, 1947 approximately two hundred of these firemen and policemen, hereafter called petitioners, instituted this suit against Chattanooga for the purpose of recovering all these salary reductions. They predicate their claim for this relief upon the ground (1) that the reductions were illegal because of the minimum salary fixed by the 1927 Legislative Act, and (2) that the instruments executed by them purporting to authorize such reductions were obtained by "business duress", and (3) this duress continued until 1947, hence, tolled the running of the statute of limitations against their claims until that time.

The "business duress" alleged was said to be fear of loss of their jobs unless they signed the reduction authorizations in question, and the same fear after 1937 if they instituted suit against the City to recover these reductions.

The Chancellor found that the duress mentioned did exist and continued until about the time of the filing of this bill, and held that all of the complainants upon whom this alleged duress is found to have been practiced are entitled to recover.

The Court of Appeals found that the agreements were signed voluntarily; that no duress, fraud or deceit was practiced; that the agreements had been fully executed years ago and preclude the petitioners from asserting any right to the reductions for which they sue; that the statute of limitations was never tolled, and ordered the dismissal of the bill.

Certiorari was granted. The insistences of the respective parties have been thoroughly presented by briefs and in oral arguments.

In *Steele* v. *City of Chattanooga,* 19 Tenn. App. 192, 84 S. W. (2d) 590, a case in which certiorari was denied by this Court, it was found and adjudged that no duress was practiced upon the firemen and policemen of Chattanooga in connection with their execution of these compensation reduction agreements. The evidence in that case is the same in quality as in the instant case. The only difference is in the quantity of the evidence, in that Steele alone testified in his case and a considerable number of petitioners testified in the instant case. However, the City seems to concede that the decision in the Steele case does not make the question of duress res adjudicata here notwithstanding the fact that it is an adjudication, insofar as duress is concerned, of the identical subject matter upon identical proof, except as to quantity. We accept this concession, without commitment as to it being the law, as eliminating the question of res adjudicata in this case.

In the case now under consideration the Chancellor correctly found this fact:

"Apparently the City had the right to select the relators for discharge, without assigning a reason therefor, and if the salary reductions had not been made it would have been obliged to reduce the cost of the fire and police departments by discharging either the relators or others."

So it is that the agreement signed by these petitioners induced the City to do what it would not otherwise have done, to wit, retain each of them in its employ. They thereby induced the City to withhold the exercise of its legal right to discharge such number of these men as was sufficient to bring the expenses of the departments within the financial ability of the City, it being a right the City would have been compelled to exercise in the absence of these agreements. These petitioners received a valuable consideration for their agreements, that consideration being the assurance of continued employment and thereby continuation of pension benefits.

In the absence of duress, the situation which resulted from the agreement clearly makes applicable to these petitioners the doctrine of equitable estoppel, because the "vital principle" of that doctrine is that "he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." *Saylor* v. *Trotter*, 148 Tenn. 359, 367-368, 255 S. W. 590, 593.

Moreover, as a practical matter, the salary reductions did not make the economic condition of these men

any worse than it was before the depression and before the reduction because of the commonly known fact that the cost of everything during the depression had decreased far more in proportion than the decrease made in the salary of these petitioners. Unlike the millions who lost all employment or worked for compensation amounting to a mere token of that previously received, these petitioners were actually faced with no economic injury by the reductions to which they agreed, as some of them would have been had there not been a plan worked out to prevent the loss of jobs by any of them. In this aspect of the case, too, we cannot escape the conclusion that the attempted repudiation of this agreement lacks an equitable appeal.

*Johnson* v. *Ford,* 147 Tenn. 63, 92, 245 S. W. 531, 539, to which we are referred by petitioners, seems to define business or moral duress as ''the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another''. The financial stress which threatened each of these petitioners was the danger of being among the twenty men whom the City would have been compelled to discharge in the absence of an agreement by all of them to accept the specified reductions in their salaries. That danger was due solely to the unprecedented economic depression. The City frankly and truthfully informed these petitioners of the conceded fact that it would be compelled to exercise its legal right to discharge twenty of them unless they were all willing to accept this reduction in salary. To truthfully inform these petitioners of the absolute compulsion with which the City was faced through no fault of its own can hardly be said to have been taking an undue advantage of them, though it necessarily put each

of them in fear of being among those who would have to lose his job unless they all accepted the only alternative possible,—a fairly moderate reduction in salary.

We concur in the findings of the Court of Appeals that the execution of these agreements under this state of facts did not amount in law or morals to duress. The agreements having been fully executed they are barred from the maintenance of this suit by the rule of equitable estoppel, nothing further appearing.

It further appears that the aforesaid Private Act of 1927 was amended by Chapter 467 of the Private Acts of 1935 so as to provide the following:

"That at any time the financial condition of the City of Chattanooga shall become such, through failure to collect taxes as provided by law, that said city is unable to pay the minimum salaries provided for Firemen and Policemen, that said City issue due bills to Firemen and Policemen covering the difference in salary actually paid and that provided by law; Provided, however, that said due bills shall not at any time exceed ten per cent of such salaries as provided by law the balance of said salaries to be actually paid. Said due bills to be issued quarterly, to be non-interest bearing, and to be paid through the collection of delinquent taxes, as collected, in excess of the amount estimated and appropriated each year."

Petitioners say that because of the foregoing amendment they are entitled to have these salary reductions paid from delinquent tax collections. The City insists that the amendment is unconstitutional.

Initially, it should be observed that this Act does not expressly declare or necessarily imply that it be given a retroactive effect. A statute will not be given retroactive effect in the absence of such express declara-

tion or necessary implication, nor "unless that intention has been manifested by the most clear and unequivocal expression." *Jennings* v. *Jennings,* 165 Tenn. 295, 303, 54 S. W. (2d) 961, 964.

■ It follows from the commonly recognized rule just stated that the 1935 amendment cannot be given a retroactive effect. Therefore, the amendment is immaterial as to all salary reductions made prior to the enactment of that amendment. The result is that as to all salary reductions prior to the enactment of the amendment the petitioners continue to be barred from the maintenance of this suit by the rule of equitable estoppel.

■ This leaves for determination the question of whether under the facts of this case the 1935 amendment will enable these petitioners to avoid application of the rule of equitable estoppel as to salary reductions made subsequent to the enactment of the 1935 amendment.

Insofar as the two statutes are concerned, it was no more provided by the amendment of 1935 that the minimum salary to be paid these petitioners should be $160.00 per month than it was prior to the passage of the amendment. The only difference in this respect is that before the amendment all of the salary of these petitioners was paid out of the general funds of the City. After the amendment under certain conditions a certain per cent thereof should be paid out of a designated fund. It was no more illegal insofar as these statutes are concerned after the amendment to be paid a compensation less than $160.00 per month than it was prior to that amendment.

As hereinbefore pointed out, petitioners are barred from recovery of salary reductions made prior to the enactment of the 1935 amendment by reason of their

own conduct, (equitable estoppel), notwithstanding the violation of the statute by the City before the passage of that amendment. Compare *State ex rel. Ball* v. *City of Knoxville,* 177 Tenn. 162, 165, 166, 147 S. W. (2d) 97, 145 A. L. R. 762. It necessarily follows that if the conduct of these petitioners after the passage of the amendment is the same as it was prior to the enactment of that amendment, then recovery as to reductions made subsequent to the amendment will be barred under the identical rule of law (equitable estoppel) which bars recovery of reductions made prior to the amendment, notwithstanding the continuation by the City of its violation of the statute.

The conduct of these petitioners was the same after the enactment of the 1935 amendment as it was prior thereto. They continued to execute and deliver to the City agreements for a specified reduction of salary for the same reason as before, and so recited in the agreements. They continued to acquiesce in such reductions and offer no complaint or protest. They continued thereby to induce the City to do what it would not otherwise have done and to act upon these agreements, and continued to receive for so doing the considerations heretofore mentioned, and these agreements have been fully executed for years prior to the commencement of this suit, its commencement being the first notice of any objection thereto. Again compare *State ex rel. Ball* v. *City of Knoxville,* supra.

It is impossible, therefore, to escape the conclusion that the equitable estoppel which bars the petitioners from maintaining this suit for recovery of reductions made prior to the enactment of the 1935 amendment likewise bars the maintenance of this suit for recovery of

such reductions made after the enactment of that amendment.

Since the conclusions to which the facts and the applicable law have necessarily led are determinative of this case contrary to the insistences of the petitioners, it becomes unnecessary to consider the other questions presented.

The decree of the Court of Appeals reversing the decree of the Chancellor and dismissing the bill will be affirmed with all costs of all Courts adjudged against these petitioners.

All concur.

## ON PETITION TO REHEAR.

TOMLINSON, JUSTICE.

The policemen and firemen have filed a petition to rehear. The insistence therein renewed is that "the Court erred in not holding that the petitioners were entitled to recover all funds deducted from their salaries after the passage of the 1935 Act by the Legislature [Priv. Acts 1935, c. 467], said act creating an express trust fund for the payment of these salaries, and a trust that estoppel would not apply to and against which the statute of limitations would not run". The same insistence is made as to the 1927 Act, Priv. Acts 1927, c. 692.

If the rule of equitable estoppel does apply, and we have so held, then that is conclusive of the case, and renders unnecessary any consideration of the question as to whether the statute of limitations would bar the claims.

Under the 1927 Act, the salaries of these petitioners were paid out of the general funds of the City. The

1935 Act did not change this further than to provide in substance that if the general funds were insufficient to pay these salaries, then a certain portion of the deficiency under certain contingencies should be paid out of whatever might be left, if any, from delinquent taxes collected, after there had been spent from those delinquent taxes the amount which the City had elected to appropriate for other purposes.

The rights given by these two statutes to these firemen and policemen are not repudiated by applying the rule of equitable estoppel in this case. That rule simply precludes these firemen and policemen from asserting those rights, because their conduct has been such that the assertion of these rights is unconscientious and inequitable. The foundation of the rule ''is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed . . .''. *Evans* v. *Belmont Land Co.*, 92 Tenn. 348, 365, 21 S. W. 670, 673. It ''is the effect of the voluntary conduct of a party, whereby he is absolutely precluded both at law and in equity for asserting rights which might perhaps have otherwise existed . . .''. *Memphis Consol. Gas & Electric Co.* v. *Simpson*, 118 Tenn. 532, 540, 103 S. W. 788.

Long ago this Court applied the rule of equitable estoppel to the attempted enforcement of asserted rights of *femes covert, Cooley v. Steele*, 39 Tenn. 605, and of infants, *Barham v. Turbeville*, 31 Tenn. 437, 57 Am. Dec. 782, and did so in the last mentioned case with the statement that ''neither infants nor femes covert are privileged to practice deception or cheats''. We think it logically impossible to conjure up any reason why

these firemen and policemen should be treated differently and held immune from the rule because of the contents of the 1927 or 1935 statutes. In *Kallock* v. *Elward,* 118 Me. 346, 108 A. 256, 258, 8 A. L. R., 750, the Supreme Court of Maine held that "a statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right".

As late as the case of *Church of Christ* v. *McDonald,* 180 Tenn. 86, 96, 171 S. W. (2d) 817, 821, 146 A. L. R. 1173, this Court said that "the general current of our decisions on the subject tends to a liberal application of the doctrine for the . . . *promotion of justice and fair dealing*". To hold, as insisted by this petition, that these firemen and policemen are immune from the rule, notwithstanding their conduct pointed out in our opinion, would be to greatly restrict the rule rather than to apply it liberally.

Let the petition to rehear be denied.