**Guy M. BEATY, Sr., et al., Plaintiffs-Appellees and Cross-Appellants,**

v.

**BROCK & BLEVINS COMPANY, Inc., et al., Defendants-Appellants and Cross-Appellees.**

Nos. 15002, 15003.

United States Court of Appeals Sixth Circuit.

June 14, 1963.

Raymond H. Moseley, Chattanooga, Tenn., Noone, Moseley & Noone, Chattanooga, Tenn., Paul W. Painter, Rossville, Ga., on brief, for Brock & Blevins Co., Inc., et al.

Richard Jahn, Swafford, Jahn & Taylor, Chattanooga, Tenn., for Guy M. Beaty, Sr., et al.

Before MILLER and WEICK, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge.

Guy M. Beaty, Sr. and others, doing business as Guy M. Beaty & Company, a partnership, with office at Chattanooga, Tennessee, brought suit in a state court in Tennessee against Brock & Blevins Company, Inc., a corporation of Georgia, and the Home Indemnity Company, a New York Corporation. The suit arose out of a construction sub-contract entered into between Beaty & Company and Brock & Blevins. These parties hereinafter will also be referred to as the plaintiffs and the defendant respectively. The Home Indemnity Company is sued as surety on the payment bond of its co-defendant, Brock & Blevins. The cause was duly removed to the District Court. Diversity of citizenship is invoked under Title 28 U.S.C., Section 1332 (a) (1).

During the period of the Korean War the Volunteer Ordnance Works at Tyner, Tennessee, which had been a useful federal facility during World War II, was rehabilitated and restored for the production of explosives. The undertaking was one of some magnitude and a multi-million dollar prime contract for the rehabilitation work was entered into between the Federal Government and Hiwassee Contractors. The prime contractor, Hiwassee, then subcontracted the mechanical work involved to the defendant, Brock & Blevins Company, Inc. Brock & Blevins in turn subcontracted the insulation part of the work on the project to the plaintiffs. It is the latter agreement, actually a sub-subcontract, with which we are here concerned.

As best we can determine from the record it was generally contemplated by all concerned that extra work would be necessary from time to time in the course of this construction. "Extra work" or "additional work" in this sense means work other than that contemplated in the original specifications and addenda. Extra work on this project was authorized by the government's architects-engineers when they determined that work additional to that disclosed by

the specifications and addenda was necessary. Authorization for the doing of such work was accomplished by their issuance of "field directives." In the ordinary course of things these field directives directly concerned or affected subcontractors down the contractual line. When the field directives authorized insulation work, Brock & Blevins would notify the plaintiffs that field directives had issued, describing the work to be performed. This notification served as the plaintiffs' authorization to execute the work therein described. Plaintiffs' charges for such work were submitted by invoices to the defendant. The latter then tacked on a ten per cent handling charge and passed the invoices on to Hiwassee for approval and submission to the government.

The plaintiffs instituted suit to recover amounts allegedly due for work done under two groups of field directives. One such group contained only two field directives, designated M–39 and M–40. The District Court allowed recovery by the plaintiffs for this particular work and it is from that portion of the judgment of the District Court granting such relief in the amount of $7,145.60 that the defendants take their appeal.

The government refused payment of the amounts charged for work done pursuant to the two field directives aforesaid, claiming that such was not extra work, but was included and disclosed in the original specifications and addenda. Since it had paid for the work so included, the government claimed that payment for the work done pursuant to these field directives had been made. Thus Brock & Blevins did not receive payment for its charges under these field directives and it in turn did not pay the plaintiffs for such work. Brock & Blevins took the position that under its contract with plaintiffs payment to the plaintiffs was conditioned upon receipt of payment from the government. By way of defense such an interpretation of the contract between these parties was sought in the District Court. In order to demonstrate that the contract contemplated such a condition Brock & Blevins undertook to prove a custom among contractors in the area to the effect that subcontractors, especially on government contracts, do not expect payment unless payment is made to their contractors. The District Judge, to whom the case was tried, found no such custom and interpreted the contract as containing no such condition to payment as was urged by Brock & Blevins. The defendant in its appeal contends that the District Court erroneously interpreted the contract.

■■ The intention of the parties as evidenced by the written contract governs our inquiry. Petty v. Sloan, 197 Tenn. 630, 277 S.W.2d 355, 1955.[1] The provisions of the within contract urged by Brock & Blevins as reflecting an intention of the parties that payment to the plaintiffs was conditioned upon payment by the government are the following:

"The Sub-Contractor[2] agrees as follows:

"I. * * *

"1. The intent of this agreement is to cover all the requirements for insulation within the scope of the original specifications and addenda as noted above. Any additional work not covered by these specifications and addenda but authorized by the Contracting Officer or his representative will be negotiated and paid for by processing, through proper channels, the necessary Field Directives.

*   *   *   *   *   *

"3. Payment for performance of any work will be made monthly and

---

1. Tennessee law controls, the record disclosing neither reliance upon nor necessity for application of the contractors' bond provisions of the Miller Act, 40 U.S.C. Sections 270a–270d.

2. The terms "sub-contractor" and "contractor" in the contract refer to the plaintiffs and the defendant respectively.

in the same manner that payment is made to the Contractor by Owner.

\* \* \* \* \* \*

"IX. To be bound to the Contractor by the items of the general conditions of the specifications and addenda, and to conform to and comply with drawings and specifications and addenda, and to assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the aforesaid documents toward the Owner, insofar as they are applicable to this particular sub-contract."

■■■ Do the provisions of the contract relating to the method and time of payment for work done and the processing of claims for the extra work indicate an intention of the parties that payment to the sub-contractor plaintiffs was subject to the condition here urged? The District Court found that the contract merely explained how payment was to be made, but did not condition the defendant's liability. If the language of the contract be clear and unambiguous, the ascertainment of the intention of the parties is a question for the court. Petty v. Sloan, supra. If the language of the contract is not free of ambiguity, extrinsic evidence, such as evidence of the interpretation the parties themselves have given the contract, may be received to determine the intention of the parties. Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, 181 Tenn. 453, 181 S.W.2d 625, 1944. Upon the court's findings of fact from such evidence, its interpretation of the contract is largely based. J. W. Bateson Company, Inc. v. Romano, 266 F.2d 360 (C.A.6) 1959. The express language of this contract can hardly be viewed as clearly conditional. In the trial court resort was had to extrinsic evidence as to the customs of the trade and the conduct of the parties themselves subsequent to the execution of their contract. The evidence so received was in strong conflict and from the record before us we cannot view the District Court's findings of fact concerning the intention of the parties as being "clearly erroneous." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.; J. W. Bateson Company, Inc. v. Romano, supra. This determination resolves the question raised by the defendants in their appeal.

■■■ We turn now to the plaintiffs' cross-appeal. The District Court found against the plaintiffs on their claims for extra work done under the second group of field directives to which reference has been heretofore made. These field directives are eleven in number and are designated by random numbers falling sequentially between Nos. M–352 and M–678. It is our understanding from the record that the government refused payment for work done under these latter field directives because its Contracting Officer challenged the reasonableness of the amounts submitted to it as charges for the execution of their work. On these eleven field directives there was no question raised as to whether or not the work done was extra work. Brock & Blevins under their contract with the prime contractor, Hiwassee, had a right to and did appeal the Contracting Officer's ruling to the government's chief engineer. The chief engineer's fact-finding board was called the South Atlantic Division Conference. We gather that the Contracting Officer's ruling herein was but one of a number under consideration at this conference. Upon conference consideration of the claims involving the plaintiffs' charges, Guy M. Beaty, Jr., represented the plaintiffs, presenting their records in an attempt to demonstrate the reasonableness of the charges submitted to Brock & Blevins for the within work. The principal bone of contention appears to have been Beaty's charges for certain overtime put in by their employees under these eleven field directives.

■■■ It is to be borne in mind that the plaintiffs, for extra work done in the course of this construction, were to be compensated for their "reasonable" charges. The purpose of the conference aforesaid was to attempt an agreed determination of what, under the circum-

stances, was reasonable compensation for the work. While it does not appear that the plaintiffs, through Mr. Beaty, were official conferees or parties to the conference, the conference report, which was introduced in evidence, reveals that he agreed to the estimate method used at the conference in arriving at a satisfactory figure and agreed to the amounts allowed by the conference for the plaintiffs' work. Thus, agreement appears to have been effected at the conference on what the reasonable charges were for this extra work performed by the plaintiffs. There was considerable conflict in the testimony regarding the manner in which Beaty agreed to the conference proposals. The tenor of the testimony of Mr. Beaty was that the agreement was really that of the government's representatives and Brock & Blevins; that Brock & Blevins actively discouraged any dissent on Beaty's part. The District Court found that the amounts determined as reasonable by the conference were all to which the plaintiffs were entitled. Brock & Blevins viewed itself as having an election between accepting the conference proposals or rejecting same and appealing to the United States Court of Claims. It is claimed by Brock & Blevins that in reliance upon the understanding that the plaintiffs were in agreement with the conference view as to the reasonableness of these charges it accepted the conference proposals, receiving such amounts from the government, and in turn paying Beaty its share of the proceeds so allowed. Thus, under this view of the proof, we have a situation in which the plaintiffs agree that a sum certain is reasonable compensation for its work, upon which acknowledgment the defendant acts to its detriment, the plaintiffs thereafter claiming a greater amount to be its reasonable compensation. This view of the proof having a substantial basis in the evidence was apparently accepted by the District Court and in so doing it did not clearly err. Rule 52(a) Federal Rules of Civil Procedure, supra. Such action on the part of the plaintiffs works an estoppel in

defeat of their claims as to this phase of the case. Molloy, et al. v. City of Chattanooga, 191 Tenn. 173, 232 S.W.2d 24.

 On their cross-appeal the plaintiffs further contend that the District Court erred in its refusal to award interest upon any amounts recovered from the defendants under their claims herein. Under Tennessee law the claims herein were not liquidated demands signed by the debtor entitling them to the allowance of interest as a matter of law. Sec. 47–1607 Tenn.Code Annotated. The allowance of interest is therefore within the discretion of the Court. State, ex rel. v. Stockton, et al., 38 Tenn.App. 90, 270 S.W.2d 586 (1954) cert. denied July 22, 1954. We find no abuse of discretion in this regard.

There being no reversible error, the judgment of the District Court is affirmed.