Mark FISHER, et al., Plaintiffs,

v.

GE MEDICAL SYSTEMS, Defendant.

No. CIV. 03–CV–298.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 8, 2003.

Morris Reid Estes, Jr., Stewart, Estes & Donnell, Irwin Bruce Venick, Dobbins & Venick, Nashville, TN, for Plaintiffs.

Keith D. Frazier, William S. Rutchow, Ogletree, Deakins, Nash, Smoak & Stewart, L.L.P., Nashville, TN, for Defendants.

## MEMORANDUM and ORDER

TRAUGER, District Judge.

On April 7, 2003, plaintiffs Mark Fisher and Chuck Floyd filed a Collective Action Complaint pursuant to the Fair Labor Standards Act of 1938. 29 U.S.C. § 216(b). (Docket No. 1) Plaintiffs alleged that the defendant, GE Medical Systems, violated the FLSA by failing to award proper compensation and overtime wages as mandated by 29 U.S.C. § 207. (*Id.*) On May 30, 2003, the defendant filed a Motion to Dismiss and Petition to Compel Arbitration and Mediation of the plaintiffs' claims. (Docket No. 16) By Agreed Order filed June 9, 2003, the court limited the plaintiffs' response to the motion to compel mediation and reserved a ruling on all other matters. Plaintiffs oppose defendant's motion. (Docket No. 25) For the following reasons, defendant's motion will be granted.

## I. STATEMENT OF FACTS

Plaintiff Mark Fisher was employed by defendant GE in various capacities from approximately January of 1998 until March 2002. (Docket No. 1) Although Mr. Fisher does not recall ever receiving a copy of the company's RESOLVE Program, (Ex. A to Docket No. 26), Ms. Marcia Fish, a former Human Resources Manager for GE, states that copies of the Program were mailed to all existing GE employees the first week of July 1998. (Fish Aff. ¶ 4) Plaintiff Fisher acknowledges that he was aware of the RESOLVE Program and had discussed it with other employees and supervisors at GE. (Ex. to Docket No. 25; Fisher Aff. ¶ 5–6)

RESOLVE is "a written agreement for the resolution of employment issues, pursuant to the Federal Arbitration Act." (Ex. B to Docket No. 19 (emphasis removed)) The Agreement provides that individuals employed at the time of RESOLVE's implementation, "by continuing [their] employment," agree, "as a condition of employment," to complete the plan's issue resolution program before pursuing claims in court. (*Id.* (emphasis removed))

The Program's "Issue Resolution Process" consists of four levels. Levels I and II occur within the company. If an employee is not satisfied with the results there, his recourse is to submit the claim to Level III Mediation. RESOLVE Level III provides for an "outside mediator [who] helps the employee and the Company open lines of communication in an attempt to facilitate resolution." (*Id.*) The plan requires those employees who were hired by GE before RESOLVE was implemented to exhaust Levels I, II, and III before filing a claim in court. (*Id.*)

The Program also provides that mediation will be administered by the American Arbitration Association under its current rules for resolution of employment issues. It describes mediation as "a process that seeks to find common ground for the voluntary settlement of covered claims." (*Id.*) RESOLVE's Level III proceedings

are confidential and private, and they occur under the guidance of a neutral mediator. Both parties may be represented by counsel during the mediation process, and, except for expert fees, attorney's fees, and witness costs, GE pays all costs and fees associated with mediation under the Program. If successful, the mediation results in a settlement agreement between parties. Although RESOLVE does not mandate that these settlements be approved by a court or the Secretary of Labor, defendant GE does not oppose such a requirement. (Docket No. 29, P. 4) If the parties are unable to reach any kind of settlement through Level III mediation, employees who were employed at the time RESOLVE was implemented may take their claim to court. (Ex. B to Docket No. 19)

## II. ANALYSIS

■ The Federal Arbitration Act provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When presented with an issue that is referable to arbitration pursuant to an arbitration agreement, therefore, courts must stay the suit until such arbitration has occurred, on the application of either party. 9 U.S.C. § 3. In the present case, defendant GE asserts that plaintiff Fisher's FLSA claim should be stayed because RESOLVE requires him to mediate all claims before filing suit in court. The plaintiffs argue that agreements to mediate do not constitute "arbitration" under the FAA and that RESOLVE mediation should not be compelled here.

■ The FAA does not precisely define what processes constitute "arbitration," and the Supreme Court and Sixth Circuit have not done so. See 9 U.S.C. § 2. However, the Sixth Circuit has explained:

> The policy in favor of the finality of arbitration is .but one part of a broader goal of encouraging informal, i.e., nonjudicial resolution of labor disputes. It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration.

*Bakers Union Factory, # 326 v. ITT Continental Baking Co., Inc.*, 749 F.2d 350, 353 (6th Cir.1984) (quoting *United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir.1977)). Similarly, a New York district court has reasoned that the structure of the FAA depicts arbitration as a process that will "settle" the controversy. *C.B. Richard Ellis, Inc. v. American Env'tal Waste Management*, No. 98–CV–4183(JG), 1998 WL 903495, at *2 (E.D.N.Y.1998). The court concluded: "Because the mediate clause at bar manifests the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' 1997 agreement, this mediation clause fits within the Act's definition of arbitration." *C.B. Richard Ellis, Inc.*, 1998 WL 903495, at *2. This court is persuaded that "arbitration" in the FAA is a broad term that encompasses many forms of dispute resolution.

■ The parties here entered into an agreement[1] to mediate claims before filing

1. The plaintiffs dispute that they entered into any agreement. The merit of this assertion is discussed hereafter.

them in court. (Ex. B to Docket No. 19) As the cases above indicate, federal policy favors arbitration in a broad sense, and mediation surely falls under the preference for non-judicial dispute resolution. Thus, agreements like RESOLVE are to be encouraged. Accordingly, the court finds that plaintiff Fisher's agreement to mediate any claim before filing it in court is binding under the FAA.

■ Next, the plaintiffs argue that mediation is inappropriate in FLSA cases because it forces employees to forego non-waivable statutory rights. First, the Program does not force employees to waive any rights. Their access to the courts is simply delayed, and their remedies are not diminished because the statute of limitations is tolled. Second, the Sixth Circuit has ruled to the contrary, finding that contractual arbitration agreements are enforceable as to claims arising under the FLSA. *See Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 313–314 (6th Cir.2000). In holding that FLSA claims could be arbitrated, the *Floss* Court reasoned: "[B]y 'agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral, rather than a judicial, forum.' ". *Floss,* 211 F.3d at 313 (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Not surprisingly, then, numerous district courts have approved mediated settlements of FLSA claims and have even ordered mediation to take place. *See, e.g., Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313 (M.D.Fla.2001) (FLSA claim went to mediation, and court award mediation costs to claimant); *Oney v. Kansas City Southern Railway Co.,* 3 F.Supp.2d 729 (E.D.Tex.1997) (mediation was attempted and failed in FLSA case); *Pacas v. Showell Farms, Inc.,* Nos. 95–1811, 95–2784, 1996 WL 192058 (4th Cir. April 22, 1996) (district court required

parties to mediate FLSA claims and the Court of Appeals affirmed the settlement).

■ Mediation is properly considered a means of dispute resolution covered under the FAA, and it is appropriate in FLSA claims. Plaintiffs will not waive their FLSA rights by engaging in mediation; it is not binding, and any settlement that is reached as a result must meet the strict terms of payment under the statute. *See* 9 U.S.C. § 216(c). Such a settlement will not be final until it is approved by the court or the Secretary of Labor. As the defendant notes, it would be illogical to find that mediation forces an invalid waiver of FLSA rights when binding arbitration does not. *See Floss,* 211 F.3d at 313–314. Plaintiffs' agreement to mediate is valid under the FAA and the FLSA.

■ Even if mediation is appropriate in FLSA claims, the plaintiffs argue that RESOLVE is not binding on them because it was unilaterally imposed, lacked their consent, and lacked the consideration necessary to enforce a contract. Principles of state contract law determine whether a binding arbitration, or mediation, agreement exists. *See* 9 U.S.C. § 2. Tennessee contract law provides no redress for the plaintiffs here.

■ It is well settled in Tennessee that the terms of an employee handbook may become part of the employee's contract of employment, provided the plan demonstrates that both parties are bound by the rules and regulations therein. *See, e.g., Brown v. City of Niota, Tenn.,* 214 F.3d 718 (6th Cir.2000) (citing *Rose v. Tipton County Pub. Works Dep't,* 953 S.W.2d 690, 692 (Tenn.Ct.App.1997); *Gregory v. Hunt,* 24 F.3d 781, 785–87 (6th Cir.1994)); *Shelby v. Delta Air Lines, Inc.,* 842 F.Supp. 999 (M.D.Tenn.1993); *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn.Ct.App.1981). In

the present case, both parties are so bound. GE specifically agrees in the Program not to modify or discontinue the procedures of RESOLVE without at least thirty days notice to employees. (Ex. B to Docket No. 19) Despite claims to the contrary, the plaintiffs also agreed to follow Program procedures by virtue of their continued employment. *See Central Adjustment Bureau v. Ingram,* 678 S.W.2d 28, 35 (Tenn.1984) (Tennessee law recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract). Section 3 of the FAA requires arbitration agreements to be written, but it does not require them to be signed. 9 U.S.C. § 3; *Tinder v. Pinkerton Security,* 305 F.3d 728, 735 (7th Cir.2002). By continuing to work at GE, the plaintiffs accepted the terms of RESOLVE, a binding contract.

That Mr. Fisher "does not recall" receiving a copy of RESOLVE does not invalidate the agreement. Mr. Fisher states in his affidavit that he had discussed RESOLVE with other employees, and it is clear that he was aware of the nature of the program, since he was concerned about the arbitration that it might involve. Furthermore, Mr. Fisher offers no evidence, aside from his recollection, that GE did not provide copies of the Program, as sworn by Ms. Fish. (Fisher Aff.) In light of his awareness of the existence and nature of RESOLVE, therefore, Mr. Fisher's continued employment at GE constitutes sufficient acceptance of the agreement as to make it a valid contract. *See Tinder,* 305 F.3d at 734–735 (enforcing an arbitration agreement against an employee who claimed that she did not recall receiving it and that it had been imposed unilaterally).

Finally, the plaintiffs claim that they received no consideration for the arbitration agreement, and thus it is unenforceable. Tennessee courts and the Sixth Circuit, in interpreting Tennessee law, have

not addressed the question of whether continued employment is sufficient consideration to validate an arbitration agreement adopted after employment has begun. However, Tennessee courts have held that continued employment may be adequate consideration for other employment agreements that restrict employees' rights or even compensation. *See, e.g., Ingram,* 678 S.W.2d at 33–35 (holding continued employment of an at-will employee adequate consideration for a noncompetition covenant added after employment began); *Molloy v. City of Chattanooga,* 191 Tenn. 173, 232 S.W.2d 24, 25–26 (1950) (upholding agreement in which employees agreed to accept a 10% reduction in their salaries, something that was illegal under federal law at the time, in order to keep their jobs). The Tennessee Supreme Court reasoned in *Molloy:* "These petitioners received a valuable consideration for their agreements, *that consideration being the assurance of continued employment* and thereby continuation of pension benefits." *Id.* at 26 (emphasis added). Furthermore, the Tennessee Court of Appeals has held that sufficient consideration for an arbitration agreement exists in a mutuality of promises to be bound. *Pyburn v. Bill Heard Chevrolet,* 63 S.W.3d 351, 358 (Tenn.Ct.App.2001) ("we conclude that the mutuality of promises contained in the [arbitration] Agreement is 'ample' consideration").

In the present case, both the plaintiffs' continued employment and the parties' mutual promises to be bound by the Program serve as adequate consideration to make an enforceable contract. GE agreed to engage in mediation and to pay the costs; the plaintiffs accepted the terms of the Program by staying with the company. There is a mutuality of promises supporting the Plan. Furthermore, the plaintiffs received consideration for agree-

ing to participate in RESOLVE in the form of their continued employment at GE. Since both parties agreed to the Plan and benefited from it, RESOLVE is a valid contract and will be enforced.

## CONCLUSION

For the reasons set forth above, the defendant's Motion to Compel Mediation is **GRANTED.** The plaintiffs must comply with the procedures outlined in the RE-SOLVE Plan, including Level III mediation, before returning to this court to litigate their FLSA claim. This case is **STAYED** pending completion of mediation.

It is so **ORDERED.**