THE STATE *v.* J. P. BELL.

CRIMINAL LAW. *Miscegenation. Marriage in another State.* The defendant, a white man, was married to a woman of color, in the State of Mississippi (where such marriages are not forbidden by law), and removed to this State with his wife, and continued to live with her as his wife. He was indicted under the act of 1870 (second session), ch. 39. Upon motion, the indictment was quashed in the court below, and the State appealed. *Held,* to be an indictable offense in this State for a white man and colored woman to live together as man and wife, although married according to the forms of law in another State.

Cases cited: Galloway *v.* The State, MS., Nashville, 1872; Lonas *v.* The State, 3 Heis., 287; Morgan *v.* McGhee, 5 Hum., 13.

FROM DAVIDSON.

Appeal from the Criminal Court. THOS. N. FRAZIER, Judge.

JNO. A. CAMPBELL for defendant.

ATTORNEY-GENERAL HEISKELL for the State.

TURNEY, J., delivered the opinion of the court.

The motion of the defendant to quash was allowed because it appeared upon the face of the indictment the parties were married in the State of Mississippi.

The question to be determined is, does a marriage in Mississippi protect persons who live together in this State in violation of the act of the General Assembly of the 27th of June, 1870?

For the defendant, the case of *Morgan* v. *McGhee,*

5 Hum., 13, is relied on. That case only decides that marriages solemnized according to the law and usages of the country where made, are good in Tennessee. It is the manner and form of marriage, and not the capacity of the parties to contract the marriage, which was passed upon by the court delivering the opinion. The reason for such rule is readily seen. Each State has its peculiar regulation—some more, some less strict and formal. The general rule resulting from all—that a marriage good in the place where made after the forms and usages of that place, shall be good everywhere—is intended to prevent a mischief that would otherwise grow out of a difference of formal and local regulations. For instance, in some of the States a license is not absolutely necessary. Now, if in one of such States a marriage is solemnized without license, being good there, it is good in Tennessee where a license is necessary, and where a marriage and living together without license would subject the parties to indictment for lewdness.

A respect for and recognition by each State—in fact, nation—of the legal ceremonial of marriage in another, is all that is meant or intended by the rule. All standard authors declare the rule comes, not *ex comitate*, but *ex debito justitiæ*. Were it otherwise, each State would be dependent upon the concurring legislation and adjudication of every other for the permanency and efficacy of its own.

Each State is sovereign, a government within, of, and for itself, with the inherent and reserved right to declare and maintain its own political economy for

The State *v.* Bell.

the good of its citizens, and cannot be subjected to the recognition of a fact or act contravening its public policy and against good morals, as lawful, because it was made or existed in a State having no prohibition against it or even permitting it.

Extending the rule to the width asked for by the defendant, and we might have in Tennessee the father living with his daughter, the son with the mother, the brother with the sister, in lawful wedlock, because they had formed such relations in a State or country where they were not prohibited. The Turk or Mohammedan, with his numerous wives, may establish his harem at the doors of the capitol, and we are without remedy. Yet none of these are more revolting, more to be avoided, or more unnatural than the case before us.

Chancellor Kent says the contract of marriage is a stable and sound contract, of natural as well as municipal law. This is neither.

Reverse the judgment and remand the cause for a new trial.