JIMMIE NELL PLUNK RHODES et al., Appellants,

*v.*

MRS. GLADYS PLUNK MCAFEE et al., Appellees.

457 S.W.2d 522.

(*Jackson,* April Term, 1970.)

Opinion filed July 6, 1970.

JAMES A. HOPPER, ROSS, ROSS & HOPPER, Savannah, of counsel, for appellants.

HAILEY & WHITLOW, Selmer, for appellees.

Mr. Chief Justice Dyer delivered the opinion of the Court.

This case presents the issue of the rights of a widow to homestead and dower in land situated in Tennessee under the following facts, which were stipulated:

B. E. Plunk married Tula Boone Griggs and to this marriage five children were born. At the time of this marriage, Tula Boone Griggs had one daughter by a previous marriage, Gladys Griggs, who, after this marriage, lived in the home with her mother and stepfather, B. E. Plunk. In 1943 this marriage ended in divorce. In November, 1944, B. E. Plunk married Gladys Griggs in Hernando, Mississippi, and to this marriage three children were born. On April 30, 1958, B. E. Plunk died, intestate, survived by his widow, Gladys Griggs Plunk, and the eight children by these two marriages. Gladys Griggs Plunk has since remarried and is now Gladys Plunk McAfee.

The sole issue presented is whether Gladys Plunk McAfee is entitled to homestead and dower in the land

of B. E. Plunk, deceased. The chancellor found she was so entitled.

We pretermit the question of whether the laws of Tennessee or the laws of Mississippi should govern in the case, since under the laws of either state we reach the same conclusion.

Volume 1A, Mississippi Code 1942, sec. 458, provides as follows:

Sec. 458. *Unlawful Marriages—What Marriages are Incestuous.*

The father shall not marry his son's widow; *a man shall not marry his wife's daughter,* or his wife's daughter's daughter, or his wife's son's daughter, or the daughter of his brother or sister; and the like prohibition shall extend to females in the same degrees; *and all marriages prohibited by this and the preceding section are incestuous and void.* (Emphasis supplied).

The marriage of B. E. Plunk to his stepdaughter, Gladys Griggs, under the laws of Mississippi is void by the express words of the statute.

In Tennessee, on this issue, there are two statutes as follows:

Marriage cannot be contracted with a lineal ancestor or descendant, nor the lineal ancestor or descendant of either parent, nor the child of a grandparent, nor the lineal descendants of husband or wife, as the case may be, nor the husband or wife of a parent, or linean descendant. T.C.A. sec. 36-401.

No man shall marry or have carnal knowledge of his mother, his father's sister, his mother's sister, his sister, his daughter, the daughter of his brother or sister, the daughter of his son or daughter, his father's wife, his son's wife, his wife's daughter, the daughter of his wife's son or daughter. No woman shall marry or have sexual intercourse with her father, her father's brother, her mother's brother, her brother, her son, the son of her brother or sister, the son of her son or daughter, her mother's husband, her daughter's husband, her husband's son, the son of her husband's son or daughter.. Whoever shall commit any offense mentioned in this section shall be deemed guilty of incest, and shall undergo confinement in the penitentiary for a period not less than five (5) years nor more than twenty-one (21) years. T.C.A. sec. 39-705.

Under the Tennessee statutes the marriage of B. E. Plunk to his stepdaughter is both prohibited and also made a penal violation. The Tennessee statute is silent on the fate of such marriage; that is, whether such be void or not.

The issue here is one of first impression in this State, but the other decisions analogous to this issue directs our decision in this case.

In *Pennegar and Haney v. State,* 87 Tenn. 244, 10 S.W. 305 (1889), Mrs. Haney was divorced by her husband on the grounds of adultery with Pennegar, and under the statute now carried as T.C.A. sec. 36-831, she was prohibited from marrying Pennegar during the lifetime of her former husband. After the divorce, Haney and Pennegar were married in Alabama, where their marriage was valid. Upon their return to Tennessee, living openly

as man and wife, they were indicted for lewdness. They defended on the ground their marriage, valid in Alabama where solemnized, was valid in Tennessee under the universal rule that a marriage valid where solemnized is valid everywhere. In *Pennegar* this Court accepted this universal rule, but noted there were exceptions. The exception applicable to Pennegar was that such marriages as are prohibited by statute are not valid. This exception is in effect divided into two sections. First, where the statute prohibiting the marriage relates to form, ceremony, or qualification; a marriage solemnized in State B and valid in State B will be valid in State A even though the marriage was not in accord with the statutes of State A relating to form, ceremony or qualification; second, where the statute in State A prohibiting the marriage is expressive of settled public policy, a marriage solemnized in State B and valid in State B will not be valid in State A on the ground such marriage is in conflict with the public policy of the State regarding public morals or good order of society. In *Pennegar* the Court dealt with the second section regarding statutes prohibiting marriages and notes that since the statute (sec. 36-831) did not expressly state the fate of such marriage, it becomes the duty of the court to determine whether the marriage was valid in Tennessee; that is, whether the statute (sec. 36-831) is expressive of settled public policy in Tennessee regarding public morals or good order of society. In *Pennegar* the Court found this statute expressive of such settled public policy and affirmed the conviction for lewdness.

The case of *State v. Bell,* 66 Tenn. 9 (1872), is referred to by the Court in *Pennegar v. State,* supra. The *Bell* case involved the marriage of a white person to a Negro

solemnized in Mississippi, where such marriages were valid. In *Bell* this Court found the marriage void in Tennessee. In the *Pennegar* opinion this Court distinguished *Bell* from *Pennegar* on the ground that in *Bell* there was also a penal statute on the same subject which was not true of the statute involved in *Pennegar*. The point applicable to the case at bar is that where the same facts which statutorily prohibit the marriage are also made a penal violation, such is indicative of the pronounced conviction of the people of this State regarding such marriages.

The case of *Owen v. Brackett*, 75 Tenn. 448 (1881), involved a woman divorced by her husband on the ground of adultery with another man. After the divorce she married her paramour. The opinion is short and we presume both divorce and re-marriage took place in Tennessee. She was denied homestead in the estate of her paramour.

The case of *Newman v. Kimbrough* (Tenn.Ch.App.) 59 S.W. 1061, 52 L.R.A. 668 (1900), involved a husband divorced by his wife on the ground of adultery. After divorce the husband married his paramour in Texas, both of them returning to Tennessee. The husband sued for the property of his paramour to which he would be entitled to by virtue of his marital rights if the marriage to his paramour was valid. The Court in dismissing this suit said:

> The policy of the law of this state is to maintain the marriage relation, and to remove all inducements of infidelity on the part of the husband or the wife possible by shutting off all hope of marriage with a paramour during the life of the wife who has obtained the

divorce. It is also a part of the policy of this state to maintain intact the family relations incurred under the first legal marriage, and thereby promote chastity, and also harmony in the family. 59 S.W. 1061.

In *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961 (1932), and *Keith v. Pack,* 182 Tenn. 420, 187 S.W.2d 618 (1945), former Chief Justice Green writing the opinion for this Court, re-affirmed the holdings in *State v. Bell,* supra, *Owen v. Brackett,* supra, *Pennegar v. State,* supra, and *Newman v. Kimbrough,* supra.

The principle enunciated by these cases is that where our statute prohibiting the marriage is expressive of settled public policy regarding public morals or good order in society, a marriage entered into in violation of the statute is void in Tennessee, which is true whether the marriage is solemnized in Tennessee or in another state where the marriage would be valid.

The statutes here at issue, T.C.A. sec. 36-401 and sec. 39-705, are expressed of settled public policy in this State regarding public morals and good order in society. The fact that a marriage in violation of these statutes has been made a felony is indicative of the pronounced convictions of the people of this State in regard to such marriage. This case is a good example of why such marriages are prohibited. The stepdaughter lived in the home with the mother and stepfather from the date of the marriage of the mother and stepfather until their divorce, with the exception of two years when she lived with an uncle. The stepdaughter's status in this family would be closely akin to the natural children of a mother and stepfather, who, in fact, were her half brothers and sisters. If there were no statutes prohibiting such mar-

riages, there not only could but very likely would result in discord and disharmony in the family.

The marriage of B. E. Plunk to his stepdaughter, Gladys Griggs, was void ab initio, and Gladys Griggs Plunk has no right of homestead and dower in the lands of B. E. Plunk, deceased.

The judgment of the chancellor is reversed and the case remanded for necessary orders consistent with this opinion.

· CRESON and McCANLESS, JUSTICES, and JENKINS and SMITH, SPECIAL JUSTICES, concur.