Gaines *v.* Horrigan.

J. L. GAINES, Comptroller in error, *v.* L. B. HOR-
RIGAN.

1. CONSTITUTIONAL LAW. *Salaries of Judges.* The Act of 1879 fixing
the salaries of Judges of the Supreme, Chancery and Circuit
Courts is valid and constitutional.

2. SAME. *Acts of Legislature.* *Journals.* The weight of authority is
that notwithstanding an Act has the signature of the Speakers
of the Senate and House and is approved by the Governor and
is published by proper authority, the Courts, nevertheless, may
look to the journals of the two houses, to see if the same was
constitutionally passed. Whether this rule prevails to its full
extent in this State in view of the *new* constitutional provision
requiring bills to be signed *in open* session and *noted* on the jour-
nals, is reserved.

3. SAME. *Same.* *Same.* The said Act of 1879 regularly passed the
Senate and in the House was amended in the second section by
striking out "Thompson & Steger's Code" and inserting "Re-
vised Code of Tennessee" passed the House, but amendment
never concurred in by Senate; *held* in *substance* there was no
amendment, "Thompson & Steger's Code" and the "Revised
Code of Tennessee" being the same book.

4. SAME. *Judges Salaries.* The constitutional provision that the sala-
ries of judicial officers shall not be diminished or increased dur-
ing the time for which they were elected does not apply to
their *term* of office, and where a Judge is appointed to fill out
the unexpired term of a deceased Judge, he is entitled to com-
pensation fixed by law at the time he assumes the duties of the
office.

FROM SHELBY.

Appeal in error from the Circuit Court of
Shelby County. J. O. PIERCE, J.

Attorney-General LEA for Comptroller.

Gaines *v.* Horrigan.

FINLAY & PETERS and C. H. EWING for Horrigan.

McFARLAND, J., delivered the opinion of the Court.

This is an agreed case submitted to the Circuit Court of Shelby County, to determine what salary L. B. Horrigan, Judge of the Criminal Court of said County, is entitled to. Under our present constitution Judges were to be elected in August, 1870, and every eight years thereafter. When vacancies occur they are to be filled for the unexpired term. The election for the second term, under the constitution, was in August, 1878. A vacancy having subsequently occurred in this office, Judge Horrigan was appointed by the Governor on the 1st of August, 1879. At the session of the Legislature of 1879 and previous to Judge Horrigan's appointment, an Act (Chapter 3 of said Acts) was passed and took effect, providing that each Chancellor, Circuit and Criminal Court Judge (except County Judges) and Judges of special Courts, hereafter appointed or elected, shall receive two thousand dollars per annum. The second section repeals the law previously in force by which the salary of said officers was $2,500 per annum.

The first objection to this act is, that it was not in fact passed by the two houses of the Legislature in the mode required by the constitution, especially that clause which provides that no bill

shall become a law until it shall have been read and passed on three different days in each House, and shall have received on its final passage in each House the assent of a majority of all its members and shall have been signed by the Speakers and Governor.

The facts as shown by the journals are in brief these, the bill was introduced into the Senate and known as Senate bill No. 3; it passed that body regularly, and was transmitted to the House, where it was amended as follows: In referring in the second section to the previous act, which was thereby repealed, it was referred to as "so much of an Act passed January 30, 1867, now section 4539a of "Thompson & Steger's Code." The words "Thompson & Steger's Code" were stricken out and the words "Revised Code of Tennessee" inserted, and as thus amended the bill was finally passed; but it was not again transmitted to the Senate for that body to concur in the amendment.

The bill was, however, subsequently signed by the Speaker of each House in open session, and the fact noted upon the journals, as required by the eighteenth section of article 2 of the constitution.

It is earnestly maintained that as it is shown that the Senate did not concur in the amendment of the bill adopted by the House, that the bill as published never did receive the assent of the two Houses. Many authorities are referred to to show that notwithstanding an act has the signatures of

Gaines *v.* Horrigan.

the two Speakers and the approval of the Governor, and is published by proper authority, nevertheless the Courts may look to the journals of the two Houses, and if from them it appear that the bill was not constitutionally passed the Act must be declared void. Such seems to be the decided weight of authority. Whether this rule would prevail to its full extent in view of the *new* provision of our present constitution, requiring all bills to be signed by the respective Speakers, *in open* session, and the fact of such signing to be noted on the journals, need not, in the view we have taken of the question, be definitely settled. It might be plausibly argued that this provision was intended to furnish conclusive evidence that the bills, in the form finally signed by the speakers, were the bills actually passed by the two Houses. The Act being performed in open session, it could hardly occur that the signatures should be affixed to bills never actually passed, without some member of the body discovering the mistake. It would seem this ought to be evidence of as high authority as the journals, at least as to all matters not expressly required to be shown by the journals. However we do not mean to intimate any decided opinion upon this question.

We hold that conceding the journals to establish all that is claimed, the bill was not amended in the House so as to change its legal import and effect. According to the opinion of a majority of this Court at the present term, the first section

of this Act would have effected a valid change of
the law if the second section had been omitted
altogether. The second section only purports to
repeal so much of the previous law as conflicts -
with the first section; it is referred to as an Act
passed January 30, 1867, now section 4539*a* of
"Thompson & Steger's Code," in the original Act;
of the "Revised Code of Tennesse" in the Act as
amended. The Act referred to is the same; the
reference to the original Act was sufficient, espe-
cially as the substance is also given. The book
referred to in the original Act as "Thompson &
Steger's Code," and in the Act as amended as "Re-
vised Code of Tennessee," we know to be the same
book. It was more properly designated in the
original bill. The Code of Tennessee was adopted
in 1858. The subsequent compilation of Messrs.
Thompson & Steger is a re-publication of the
"Code" with the subsequent acts, as additional sec-
tions under the appropriate original sections, with
letters affixed to distinguish them. This was the
book referred to, and the Act referred to and re-
pealed is the same.

It is earnestly argued that it would be a very
great stretch of judicial power for a Court to un-
dertake to say that the amendment is immaterial;
that this was a question for the two Houses of
the Legislature; that it is enough for this Court
to see that the bill was *amended* in the House,
and the Senate did not concur in the amendment;
that we cannot look beyond to see in what the.

amendment consisted.    But it seems to us that it
would be the exercise of a power far more arbi-
trary and unwarranted for the Court to declare
the Act of the supreme legislative authority void
upon an objection like this, in which there is no
substance.   If we may look to the journals to
see that *in form* there was an amendment not
concurred in, we may look further to see that *in
substance* there was no amendment.   We have no
direct authority upon the point, but we are of
opinion that the Act cannot be declared void, for
the reasons given.   The bill did receive the assent.
of both Houses in the constitutional mode.

It is next argued that if the Act was passed
in accordance with the constitution it can only ap-
ply to Judges who may be elected in 1886.   Part
of the 7th Sec. of Art. 6 of the constitution is
in these words:   " The Judges of the supreme or
inferior courts shall, at stated times, receive a
compensation for their services, to be ascertained
by law, which shall not be increased or diminished
during the *time* for which they are elected.

The argument is, that the latter clause was in-
tended to prohibit the increasing or diminishing of
a Judge's salary during the *term* for which he is
elected.   That is to say, as the judicial terms are
eight years, and the terms of all judges begin and
end at the same time, it was the intention that
all Judges holding during the *term* should have the
same salary, and that the salary should not be in-
creased or diminished during the *term*; that the

Judges who are elected or appointed to fill out unexpired terms stand, in all respects, in the place of the Judge whose *term* they are elected or appointed to fill.    Otherwise, it must result that all the Judges elected at the August election, 1878, must continue to receive the salary then fixed by law, that is to say, for Chancellor, Circuit and Criminal Judges, $2,500.    Whereas, Judges who were appointed or elected to fill vacancies that occur after the passage of the Act of 1879 will receive only $2,000, and we have Judges of the same grade and performing the same services receiving different salaries.

This construction would be desirable in some respects, and would avoid the incongruity indicated, but would require a departure from the plain meaning of the words used.    If the purpose of the framers of the constitution had been as indicated, it would have been easy to use language clearly expressing such intention, but the language is, that the compensation shall not be increased or diminished during the *time* for which they are elected.    This obviously means during the time and not the *term* for which the Judge is elected. We are not at liberty to strain the language in order to reach a construction that may comport with our notions of justice to the particular Judge, or to avoid incongruous results.    We must give effect to the clearly expressed intention, whatever may be the consequences.

Furthermore, looking to the reasons upon which

Gaines v Horrigan.

this clause of the constitution was doubtless adopted it must be apparent that the object was to prevent the increase or diminishing of a Judge's salary *while he is in office*, so as to relieve him as far as possible from improper influences, and promote an independent discharge of his duties.

If the change takes place before the Judge is elected or appointed, the evils intended to be guarded against cannot well result as to him. He accepts the office with a knowledge of the salary as fixed, and no injustice is done him.

The language of the constitution is unambiguous, and its plain meaning must prevail.

It is not denied that the Act in terms applies to all Judges elected or appointed after its passage. We must hold, therefore, that Judge Horrigan's salary is only $2,000, and the judgment of the Circuit Court will be reversed.

FREEMAN, J., delivered the following dissenting opinion :

The agreed case raises the question of the constitutionality of the Act of the Legislature of 1879, chap. 3, p. 4, which is as follows :

" That each Chancellor, Circuit and Criminal Judge, and Judges of Special Courts hereafter appointed or elected, shall be entitled to a salary of two thousand dollars per annum."

The 7th section of article 6th of our Constitution is, " the Judges of the Supreme or inferior Courts, shall. at stated times, receive a compensa-

tion for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected." By section four of same article it is provided, after fixing the qualification of Judges, " his term of service shall be eight years." In case of vacancy by death or resignation, " the appointment or election to fill the vacancy, is only to be for the unexpired term :" Section 5 of article 7.

Judge Horrigan was appointed to fill a vacancy by reason of the death of Judge Scruggs, who was elected in 1878, before the passage. of the Act of 1879, and whose salary was $2,500, which could not have been increased or diminished during his term of eight years.

The question is, whether the time for which an officer or Judge is appointed, shall be held to mean the term of office, that is the eight years and whether *time* in the last clause, shall be construed to mean term, and thus, during the *term* of eight years, the salary cannot be changed, as to all · Judges elected for such term Judge Horrigan, filling but the unexpired term, claims to be protected, and entitled, by this clause of · the Constitution, to the salary attached to the term of office, the remainder of which he is filling out. It may be so construed. Would it not be more in accord with the general purpose clearly indicated by the Constitution, that it should be so construed?

It certainly was not supposed by the Conven-

tion that there should be during the same term, one set of officers of this grade, receiving one salary, another a different one. The language is. "The Judges of the Supreme or inferior Courts shall receive compensation for their services, to be ascertained by law, which compensation shall not be increased or diminished during the *time* for which they are elected."

*All* the Judges, for the period fixed, are to receive the same compensation, is clearly the idea of this provision. All are to receive it, the amount to be ascertained by law, that is, by a general law, operative on all alike. It certainly was not intended that a special law should be passed fixing the compensation of each class of Judges during the time for which the Judges were elected. They were all to be elected at the same time, and the term is to be eight years. If vacancy occur, the appointment is to be made to fill the unexpired *term.*

Would it be in accord with the intent of the Constitution, to enact that Judges, elected or appointed, say the first year after the regular election, should have, say $2,500; those the second, $2,000; the third, $1,500, and so on, during the entire term?

Would not this be to classify and discriminate between the Judges of the same grade in a manner not contemplated by the Constitution? The difference in principle is not seen in the case supposed, and the case before us, for if it can be

that the salary of Judges appointed or elected, during the same term, after the regular election, can be made different from others holding for the same period, then any number of grades of compensation may be fixed, and infinite confusion and incongruity be introduced, certainly contrary to the intent of the Convention.

If this article of the Constitution intends the compensation to be fixed by a general law, then it was intended that general law should fix the compensation of all the class at the same rate, during the same term. If it may be changed as to Judges elected or appointed after the general election, then it may be made different in amount during the time for every six months during the eight years. A construction that admits of such a result should not be followed, unless the language imperatively requires it. It does not, and the opposite may as fairly be the construction, from which no incongruity or confusion flows. Would not this be a result more nearly in accord with the purpose or intent of the convention? If so, it ought to be preferred. The intention, when fairly arrived at, is the end to be sought in all construction or interpretation.

The general policy of the State and uniform practice, before and since the constitution, may aid in arriving at the meaning of the language used. Uniformity of salary in the same grade of judicial officers has been the unbroken custom and usage from the foundation of the government to the pres-

Gaines *v.* Horrigan.

ent law.   A construction favoring a change is one that only can be assumed as proper, when the language cannot be held to allow of a construction in accord with this usage, and it is clear it was intended to be changed.   No such clear purpose is seen in the language used.   In fact, we know no purpose to make such a change was intended.

In view of these considerations, we may well say that the true intent was, that compensation of Judges was to be fixed by a general law, before the commencement of their term of eight years, and during this time or term the compensation attached to the office should remain.   Therefore, a Judge filling an unexpired term is to receive the compensation fixed at the beginning of the term which he fills.   This would give uniformity in precise accord with past usage, and would be in accord with the intent of the convention, and at the same time do no violence to the language of the constitution.

For these and other reasons, I dissent from the opinion of the majority of the Court, in this case.