**OVERTON COUNTY, Tennessee, et al., Appellants,**

**v.**

**The STATE of Tennessee ex rel. E. C. HALE et al., Appellees.**

Supreme Court of Tennessee.

Oct. 9, 1979.

Fred D. Thompson, Thompson, Crawford & Rodgers, Nashville, for appellants.

J. H. Reneau, III, Reneau & Reneau, Celina, John R. Officer, Livingston, for appellees.

## OPINION

FONES, Justice.

Nine county officials of Overton County brought suit to collect the annual salary adjustments provided by the Legislature tied to the consumer price index as published by the United States Department of Labor, Overton County having paid plaintiffs only the maximum base salaries in effect on September 1, 1974.

The learned Chancellor held that the payment of the annual salary adjustments was mandated by the Legislature in enacting the respective applicable statutes, and rejected all of the contentions of Overton County seeking to avoid, or in the alternative reduce, the amounts sought by plaintiffs. We affirm except for one minor modification.

The time period involved was September 1, 1974, through August 30, 1978, although not all of the plaintiffs were office holders on September 1, 1974. The offices involved are County Trustee, Sheriff, the Clerks of the Circuit and County Courts, County Assessor, Superintendent of Roads, the County Judge who has no judicial duties and is in effect the County Manager, and the General Sessions Judge. Two persons held the office of Circuit Court Clerk during the period.

### I.

The compensation of all officers other than the General Sessions Judge are determined directly or indirectly by a number of lengthy and complicated statutes found in Title 8, Chapters 21, 22, and 24 of the Tennessee Code Annotated. We will not undertake the task of articulating all of the compensation options the Legislature has granted to Tennessee counties. The undisputed fact in this case is that Overton County had elected to pay its county officers and clerks the maximum salary prescribed in T.C.A. § 8–2403, regardless of the relationship between fees collected and salaries and expenses of the respective fee-generating offices. Defendant's own witness, Fred White, a member of the County Court since 1970, so testified, confirming the testimony of Mr. Harvey of the State Comptroller's Office, Division of County Audits. The Legislature has clearly and unequivocally granted that option to counties in T.C.A. § 8–2204. The quid pro quo to the county which so elects is that its clerks and county officials must pay all fees collected to the County Trustee, monthly, rather than at less frequent intervals, as would otherwise be the case. T.C.A. § 8–2204. It necessarily follows that the fact issues raised by defendant with respect to whether the County Court Clerk and the Circuit Court Clerk generated sufficient fees to pay the salaries and expenses of their respective offices are irrelevant and immaterial.

T.C.A. § 8–2403 directly controls the compensation of the Trustee, Sheriff and Clerks of the County Court and Circuit Court and indirectly the compensation of the Tax Assessor, the Road Superintendent and the County Judge, where a county, as here, has made the election to pay the maximum salary.

T.C.A. § 8–2403 provides, in relevant part, as follows:

> "*Maximum compensation of clerks and county officers.*—The officers enumerated in § 8–2201 may receive maximum compensation per year as follows:
>
> .   .   .   .   .
>
> (E) In counties of the fifth class: County trustees, sheriffs, clerks and masters of chancery courts, clerks of county courts, clerks of probate courts, clerks of circuit courts, register of deeds, clerks of criminal courts and clerks of general sessions courts  . . . . . . . . . . . .   $12,650
>
> .   .   .   .   .
>
> The compensation set out herein shall be the base maximum annual salaries,

beginning September [2,] 1974 and shall be adjusted on September 1, 1975 to reflect the per cent of change in the average consumer price index (all items—city average) as published by the United States department of labor, bureau of labor statistics, between that figure for the calendar year 1974 and the calendar year 1973. Each succeeding September 1, a similar adjustment shall be made, based on the per cent of change in the average consumer price index between the two (2) calendar years preceding September 1 of the year in which the adjustment is made. No adjustment shall be made to reduce any such base salaries below the amounts provided in subdivisions (A) through (H) of this section.

No annual salary adjustment as provided by this section shall be made after September 1, 1978."

Defendant argues that the legislative use of the permissive word "may" in the first sentence of the statute gives all counties the continuing option each year to pay or not to pay the annual adjustment, subject only to the proviso that the actual amount paid falls between the adjusted maximum and the adjusted minimum provided in § 8–2405.

█ We think it clear that the Legislature used the word "may" in the first sentence of the statute for the reason that payment of the maximum salary structure is an option available to counties, and is only mandatory (1) when the fees collected exceed all salaries and expenses of the office; and (2) for the office of sheriff. T.C.A. § 8–2404. It is equally clear that when a county becomes subject to T.C.A. § 8–2403, by election or the mandates of T.C.A. § 8–2404, it has no discretion whatever in varying from the amount of compensation fixed therein, which mandatorily includes the annual salary adjustment. The paragraph providing the annual salary adjustment uses the word "shall" in both appropriate places, with the effect that the annual cost of living adjustment must be

made to determine the maximum compensation figure intended by the Legislature. The annual percentage change reflected by the consumer price index, applied in accord with the statute, produces a fixed sum each year and all counties subject to that statute must pay that sum. *Cf. Hobbs v. Lawrence County*, 193 Tenn. 608, 247 S.W.2d 73 (1952).

## II.

Next, Overton County says that the general appropriations bills enacted by the Legislature in 1975[1] and 1976[2] limited the annual salary adjustments of county officers for those years to two and one-half percent and nine percent, respectively, instead of the cost of living index figures which were stipulated to be eleven percent and 9.1 percent, respectively.

Section 7 of both the 1975 and 1976 acts purported to limit the annual salary adjustment of members of the general assembly, state commissioners, district attorneys, state judges and other state officials as well as county officers. Immediately following the percentage limitation for the respective years, the following sentence appears in each of the acts.

"If any portion of this paragraph is invalidated and/or held to be unconstitutional with respect to the amount of annual salary authorized to any of the officials referred to and/or enumerated, it is the legislative intent that this entire paragraph is void and that no sentence, clause, or phrase of this paragraph would have been enacted without the invalid portion."

█ The limitation sought to be imposed upon members of the General Assembly violated Tennessee Constitution Article II, Section 23, in that the reduction in salary was required to take effect in the year of passage of each act, rather than after the next general election, following passage of the act.

The limitation sought to be imposed upon incumbent members of the state judiciary

---

**1.** 1975 Tenn.Pub. Acts ch. 380.

**2.** 1976 Tenn.Pub. Acts ch. 732.

violated Tennessee Constitution Article VI, Section 7, in that the decrease in salary was *enacted during* the constitutional term, to take immediate effect. See Section IV of this opinion for further discussion of that constitutional provision.

■ It follows that the salaries of county officials contained in the 1975 and 1976 general appropriations bills were void, by express declaration of legislative intent.

### III.

Overton County interposes the defense of laches. These suits were filed August 24, 1978. For most of the nine plaintiffs, the first annual adjustment period began September 1, 1975, although one of the Circuit Court Clerks did not take office until September 1, 1977.

The rationale of the doctrine of laches and the usual situations in which it may be applied is succinctly stated in Gibson's Suits in Chancery, 5th Edition, § 81:

"The neglect of a person to make complaint, or bring suit in due season, he being *sui juris* and knowing the facts, or having the means of knowledge, is called *laches*; and where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in adverse rights, Courts of Equity refuse to interfere, they acting either by analogy to the statutes of limitations, or upon their own inherent doctrine of discouraging antiquated demands. . . .

The Court frowns upon attempts to unsettle what has long been at rest, first, because of the difficulty, if not impossibility, of making proof; second, because, in uprooting an ancient matter, innocent persons are liable to be injured; third, because the defendant, even if originally in the wrong, may, as a result of the complainant's laches, have acquired such affirmative rights that he cannot be placed *in statu quo*; and fourth, because the delay raises a presumption that originally there was, if not a good defense, at least a better one than can now be made.

. . .

Laches will bar suits (1) to open accounts and settlements long acquiesced in; (2) to change a boundary line long recognized; (3) to correct an alleged fraud, accident or mistake long submitted to; (4) to have a nuisance abated that has long existed; (5) to have a contract either rescinded or specifically enforced, when by delay the parties cannot be placed *in statu quo*; (6) or to have any transaction uprooted, or any business unravelled, when, in consequence of long acquiescence, the chances are that material evidence has been lost, that the memory of the facts has become dimmed, that parties or witnesses have died or removed, and that new rights have sprung up that should not be unsettled." *Id.* at 101–103.

No question of fact is involved in this suit and the controversy is purely a question of statutory construction about which there is little room for a valid difference of opinion. Thus the principal foundation upon which the doctrine is predicated, to wit, the difficulty or impossibility of making proof because material evidence has been lost and the memory of facts has become dimmed, is not present here.

The minutes of the Overton County Quarterly Court Meeting held on June 30, 1975, made an exhibit in this case, reveal that the County Judge "brought before the Court the fact that the Legislature had passed eleven percent increase in county official's salary, effective September 1, 1975." A member of the Court moved not to pay the increase in salary and the motion carried 14 to 0 with one abstention.

Fred T. White, an optometrist, was a member of the Overton County Quarterly Court at the time of that meeting and at the time of the trial. He testified that he spoke in favor of the motion because his conscience would not let him give the county judge a $1,500 raise and other office holders a $1,400 raise when the "poor school teachers" were going to get $150 and that the members of the Court went along with him. He was asked if the 1975 general appropriations bill limiting the annual salary adjustment to 2½ percent influenced the

Court and he first answered in the affirmative and later in the negative. We interpret his ambiguous testimony on the question of what consideration was given to the legal aspects of the issue to be that the Overton County official's salaries, without any annual adjustment, would fall somewhere between the minimum and maximum prescribed by the applicable statutes, and implicitly, that complied with the law.

But, the significance of the actions of the Overton County Quarterly Court on June 30, 1975, on the issue of laches, is that they confronted the legal question and made a decision not to pay any annual salary adjustment. Inherent in that decision was the necessary recognition that the county faced a contingent liability to its officials for the annual salary adjustment that would continue until such time as the statute of limitations of six years would bar their claims.

Overton County says that if the plaintiffs had filed their suits immediately and prevailed, the tax rate increase necessary to pay the salaries would have been smaller than that required after approximately three years accumulation of annual salary adjustments. That argument is neutralized by the fact that the County may now pay the same principal sum with deflated dollars. Based upon the figures in this record, approximately 17 cents per one thousand dollars of assessed valuation of Overton County property would be involved in satisfying the claims of the plaintiffs in this case.

The only Tennessee case cited by Overton County is *State ex rel. Ball v. City of Knoxville,* 177 Tenn. 162, 147 S.W.2d 97 (1941). Plaintiff was a civil service employee who was transferred four times and in the case of three of the transfers her salary was below the scale she had attained prior to the first transfer. Under the civil service system then in effect, the municipality could not reduce her salary without preferring charges and according her a hearing thereon. She made no protest and sought no hearing at the time of any of the four transfers, and the Court designated her period of acquiescence as eighteen months. The Court made no mention whatever of the doctrine of laches in disposing of that issue as follows:

"The fact is that during that long period she led the officials to believe that these transfers met with her approval. This, in effect, constituted new contracts between the parties, resulting in the abrogation of the old ones. We hold, further, that by such delay relator has forfeited her rights to be reinstated in her former positions, as well as to recover additional compensation." *Id.* at 166, 147 S.W.2d at 98.

■ We agree with the general principle that where public employees or elected officials are allegedly illegally removed or suspended or otherwise deprived of both an office and the compensation attached thereto, due diligence should be exercised in asserting their rights. Ordinarily, such cases involve the possibility of double compensation for a single office and other considerations not present here. There is no issue in this case involving the right to any public office. The sole issue is the correct amount of compensation due elected county officials of Overton County as prescribed by statute and, in our opinion, the delay in bringing suit to resolve a purely legal issue between the plaintiffs and Overton County does not justify application of the doctrine of laches.

IV.

Overton County asserts that the annual salary adjustment applicable to the General Sessions Judge would violate Tennessee Constitution Article VI, Section 7, which provides that the compensation of judges, "shall not be increased or diminished during the time for which they are elected."

The annual salary adjustment applicable to General Sessions Judges was enacted by the Legislature as Chapter 808, Public Acts 1974 [T.C.A. § 16–1109(D)] to take effect September 1, 1974, the beginning date of the term. The General Sessions Judge of Overton County who is one of the plaintiffs in this case took office on September 1, 1974, and the annual salary adjustments involved in this case all fall within the term for which he was elected in 1974.

■ It is universally recognized that the rationale undergirding such constitutional provisions is the maintenance of judicial independence from legislative action to punish or reward judges for decisions that produce a favorable or unfavorable reaction. The key words of the Tennessee constitutional provision are "during the time" which obviously means legislative action taken within the time period of a judicial term of eight years, to increase or diminish compensation.

The holding of *Shelby County v. Judges,* 3 Shannon Cases 508 (1875) was squarely to that effect. By section 11 of Chapter 28 of the Acts of 1869–70, the Legislature authorized the County Court of Shelby County to increase the salaries of its state judges and chancellors, by a sum not exceeding $2,000, in addition to the uniform state-wide salary of $2,500. The Shelby County judges were elected in May 1870, and subsequent thereto the County Court of Shelby County appropriated the additional $2,000, later rescinded it, then reinstated it, thereafter reduced it, and lastly disallowed it altogether. The judges brought suit seeking reinstatement of the full $2,000 increase.

The Court dealt with the constitutional issue presented, as follows:

"These judges, or four of them, were elected and qualified before any action of the county court in regard to their salaries. Their salaries, as then fixed by law, was $2,500. When, and how was it increased? It seems to us clear that if it was ever increased to $4,500, it was when the county court made the allowance of $2,000 which was during the term for which they were elected. . . .

The object of this clause of the constitution against increasing or diminishing the salaries of the judges during the time for which they are elected was intended to make them independent—above the temptation of resorting to any device inconsistent with their official duty to have their salaries increased, and beyond the danger of being intimidated by a fear of having their salaries reduced. Mr. Story, on the subject, quotes from The Federalist as follows: 'Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support. In the general course of human nature, a power over a man's subsistence amounts to a power over his will.' Story on the Constitution, § 1629. After these judges came into office, they were dependent upon the county court, composed of all the justices of the county, for an increase of their salaries, and the act by which they are to get the increase, if at all, occurred during their term, and it seems to us clear that the spirit as well as the very letter of this provision of the constitution would be violated by this increase of salary." *Id.* at 514–15.

In *Gaines v. Horrigan,* 72 Tenn. 608 (1880), the plaintiff judge was appointed to fill an unexpired term. Subsequent to the beginning of the constitutional term, but prior to plaintiff's appointment, the salary of state judges was reduced. The issue presented was whether Judge Horrigan stood, in all respects, in the place and stead of the judge whose term he was appointed to fill and was thus entitled to the salary in effect at the beginning of the term. The *Horrigan* Court employed the same basic reasoning found in *Shelby County v. Judges, supra,* as follows:

"[L]ooking to the reasons upon which this clause of the constitution was doubtless adopted it must be apparent that the object was to prevent the increase or diminishing of a Judge's salary *while he is in office,* so as to relieve him as far as possible from improper influences, and promote an independent discharge of his duties.

If the change takes place before the Judge is elected or appointed, the evils intended to be guarded against cannot well result as to him. He accepts the office with a knowledge of the salary as fixed, and no injustice is done him." 72 Tenn. at 614–615.

However, because of the use of the word "time" when, as the *Horrigan* Court noted the word "term" could have been used, the

Court narrowed the construction of Article VI, Section 7, so that, if legislative action changing the salary *during a term* precedes the election or appointment of a judge, he is subject to that change, even though it is ineffective as to all judges in office at the beginning of the term or preceding legislative action. We expressly reserve any comment on that aspect of *Horrigan* which differs from the holding in *Shelby County v. Judges, supra,* because we are not confronted with that factual situation. The rationale of *Horrigan* that any change *after* a judge is in office subjects him to improper influences and interferes with the independent discharge of his duties, is consistent with *Shelby County v. Judges, supra,* and requires the same result under the facts of this case.

Overton County insists that the dollar amount cannot be changed during the term and cites as authority for that interpretation, *State ex rel. Goodwin v. Rogers,* 217 S.E.2d 65 (W.Va.1975) and a companion case *Delardas v. County Court of Monongalia County,* 217 S.E.2d 75 (W.Va.1975). The issue in *Rogers* involved the salary of a member of the county commission of Boone County, West Virginia, whose six year term of office commenced January 1, 1971. At that time his salary was fixed by statute at $2,400. Subsequent to the beginning of his term the West Virginia Legislature classified counties into seven classes and provided the salaries to be paid members of the county commission in each class, resulting in an increase of Goodwin's salary as a member of the Boone County Court. The constitutional provision involved provides, in relevant part, "nor shall the salary of any public officer be increased or diminished during his term of office." *W.Va.Const.* art. VI, § 38. Without any discussion of purpose or objective of such provisions the Court simply held that Goodwin's salary could not be increased without violating the constitution.

*Delardas* involved another section of the same 1972 Act of the West Virginia Legis-

lature at issue in *Rogers.* The act classified all of the counties of West Virginia by means of a table providing minimum and maximum assessed valuation of all classes of property.[3] The section also provided that each West Virginia County should determine each year whether its valuation of all classes of property placed it within a class above or below the class "in which the county then is." Upon approval by the State Tax Commissioner of a certification that a county had moved to another class, the statute directed the county court to make the necessary salary adjustments of public officials.

The West Virginia Court held that, " * * * normal fluctuations in assessed valuations of property within a given county will cause changes which, if the statute were to be applied as written, would result in automatic salary increases for incumbent county officials in a manner prohibited by West Virginia Constitution, Article VI, Section 38." 217 S.E.2d at 78. Again without any discussion the Court held that that section of the act was in conflict with the West Virginia Constitution prohibiting change in the salary during the term of office. *Delardas* as well as *Rogers* was in the context of a legislative act passed after the term of office had commenced, undertaking to change the salaries immediately and for a current term of office. Neither the language employed nor the results reached in the West Virginia cases contradict the interpretation of the Tennessee Constitution that we have indicated heretofore.

█ The theory behind hinging an annual change in salary to the consumer price index is that the index accurately measures the change in the purchasing price of the dollar, with the result that by "indexing" judicial salaries, the "compensation" remains constant. That theory has a solid foundation in fact. The Tennessee Legislature has no power over the amount of the index change and thus no power over the will of judges. In our opinion, the annual salary adjustment provided in T.C.A. § 16–

---

3. For example, class one counties, minimum 600 million to a no-limit maximum. Class sev-

en counties were those with assessed valuations falling between 0 and $14,999,999.

1109(D) as applied to the General Sessions Judge of Overton County, who took office on September 1, 1974, does not violate Tennessee Constitution Article VI, Section 7.

The base salary of the General Sessions Judge of Overton County is $8,000. T.C.A. § 16–1109(D). By Chapter 20 of the Private Acts of 1967, the General Sessions Judge of Overton County also serves as Probate Judge for which that act prescribes an additional salary of $2,500. The trial judge awarded the Overton County General Sessions Judge an annual salary adjustment based upon the combined total of the two salaries, $10,500. There exists no statutory basis for including the $2,500 salary for services as Probate Judge in the amount of the annual salary adjustment and the decree of the trial court must be modified accordingly.

The decree of the trial court is affirmed, except for the inclusion of $2,500 in the annual salary adjustment of the General Sessions Judge and this cause is remanded for the entry and enforcement of an appropriate decree. Costs are adjudged against Overton County, Tennessee.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.